Joshua E. GALE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 03A01–0708–CR–382.

Court of Appeals of Indiana.

March 20, 2008.

Donald J. Dickherber, Columbus, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jessica A. Meek, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Joshua E. Gale appeals his convictions and sentences for two counts of rape as class B felonies [1] and three counts of battery as class A misdemeanors.[2] Gale raises four issues, which we revise and restate as:

---

1. Ind.Code § 35–42–4–1 (2004).

2. Ind.Code § 35–42–2–1 (Supp.2005) (subsequently amended by Pub.L. No. 99–2007, § 209 (eff. May 2, 2007), and Pub.L. No. 164–2007, § 1 (eff. July 1, 2007)).

I. Whether the trial court erred by refusing Gale's request for an instruction on sexual battery as a class D felony;

II. Whether the trial court committed fundamental error when instructing the jury on the elements of rape;

III. Whether the evidence is sufficient to sustain Gale's convictions for rape;

IV. Whether the trial court abused its discretion in sentencing Gale; and

V. Whether the sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm in part and vacate in part.[3]

The relevant facts follow. On June 23, 2006, M.A. and her friend Amanda went to a bar in Columbus, Indiana, to celebrate M.A.'s birthday. While at the bar, Gale introduced himself to M.A. Gale bought M.A. several drinks, kept trying to dance with her, and kept asking her to go to another bar with him. During the evening, M.A. had five shots of tequila and a couple of mixed drinks. She danced with Amanda but fell down several times while dancing because she was intoxicated.

Gale told M.A. that she was "a player" for letting him buy the drinks but not dancing with him. Transcript at 37. Gale also told Amanda, "I bet your friend thinks I'm just trying to get in her pants because I bought her a drink." *Id.* at 137. Amanda told him, "plenty of gentlemen buy us drinks. It doesn't mean one thing one way or another." *Id.* Gale got angry and said, "well, you guys are players. I've been buying you drinks all night and you're not even grateful and you don't even appreciate it." *Id.*

Eventually, M.A. decided to leave the bar and called her friend, Andy, to pick her up. Gale was upset and angry that M.A. was not leaving with him. Andy drove his convertible Isuzu Amigo vehicle to the bar, and his friends, Jesse and Jeremy, followed Andy in Jesse's vehicle. Because Amanda was concerned about how intoxicated M.A. was, Amanda followed her out of the bar and made sure that M.A. found Andy and Jesse in the parking lot.

Andy saw that M.A. was very intoxicated, and Andy and Jesse helped M.A. to

---

3. Gale included a copy of the presentence investigation report on white paper in his appendix. *See* Appellant's Appendix at 235. We remind Gale that Ind. Appellate Rule 9(J) requires that "[d]ocuments and information excluded from public access pursuant to Ind. Administrative Rule 9(G)(1) shall be filed in accordance with Trial Rule 5(G)." Ind. Administrative Rule 9(G)(1)(b)(viii) states that "[a]ll pre-sentence reports pursuant to Ind. Code § 35–38–1–13" are "excluded from public access" and "confidential." The inclusion of the presentence investigation report printed on white paper in his appellant's appendix is inconsistent with Trial Rule 5(G), which states, in pertinent part:

Every document filed in a case shall separately identify information excluded from public access pursuant to Admin. R. 9(G)(1) as follows:

(1) Whole documents that are excluded from public access pursuant to Administrative Rule 9(G)(1) shall be tendered on light green paper or have a light green coversheet attached to the document, marked "Not for Public Access" or "Confidential."

(2) When only a portion of a document contains information excluded from public access pursuant to Administrative Rule 9(G)(1), said information shall be omitted [or redacted] from the filed document and set forth on a separate accompanying document on light green paper conspicuously marked "Not For Public Access" or "Confidential" and clearly designating [or identifying] the caption and number of the case and the document and location within the document to which the redacted material pertains.

Andy's vehicle. M.A. got into the back seat of Andy's vehicle and lay down. Gale then approached Andy and Jesse and accused them of trying to take advantage of M.A. He was also asking M.A. for her phone number, but she did not give Gale her phone number. At this point, M.A. was "in and ou[t] of consciousness." *Id.* at 170. Gale kept asking for "five minutes alone" with M.A., but Andy and his friends refused. *Id.* At one point, when Gale said that he wanted five minutes alone with M.A., M.A. grabbed Andy's shirt and shook her head no. Gale then hit Jeremy and pushed Andy and Jesse. M.A. was then unconscious in the back of Andy's vehicle. Andy, Jesse, and Jeremy then went three or four parking spots away to call for help.

Their friends arrived almost immediately, and one of the friends yelled for Andy to return to his vehicle. When Andy returned to the vehicle, he saw Gale in the vehicle with his pants down, M.A.'s legs up in the air, and M.A.'s skirt pushed up. One of Andy's friends went to get security and call the police. He encountered a group of National Guardsmen, and Sergeants Jason S. and Brian B. ran over to the vehicle. They saw Gale having sexual intercourse with M.A., and M.A. was not making any movement or sound. Sergeant Brian B. attempted to talk to M.A., but her eyes were closed, and she did not respond. They then asked Gale what was going on, and Gale responded, "everything was okay and nothing was going on. It was all consensual." *Id.* at 303. After hearing that the police had been called, Gale stood up, pulled his pants up, jumped out of the vehicle, and started running. Several of the National Guardsmen pursued and tackled Gale, and Sergeant Jason S. and Sergeant Jason N. sustained minor injuries while trying to subdue Gale.

Later, M.A. remembered getting into Andy's vehicle, but did not remember anything after that except "[b]eing outside at the bar in the parking lot with police cars around, throwing up, crying and screaming that he raped me." *Id.* at 43. M.A. was taken to the hospital where she was minimally responsive, and her blood alcohol level was 0.309. M.A. had bruises on her inner thighs, some abrasions and contusions on her legs, and large bruises on her arms.

The State charged Gale with: (1) Count I, rape as a class B felony for knowingly having sexual intercourse with M.A. when she "was unaware that sexual intercourse was occurring;" (2) Count II, rape as a class B felony for knowingly having sexual intercourse with M.A. when she "was so mentally disabled or deficient that consent to said intercourse could not be given;" and (3) three counts of battery as class A misdemeanors for his actions toward Sergeant Jason N., Sergeant Jason S., and Jeremy. Appellant's Appendix at 10–11. At the jury trial, the State requested that the jury be instructed regarding attempted rape. Gale requested an instruction on sexual battery as a class D felony. The trial court denied Gale's request and found that there was no serious evidentiary dispute and that sexual battery was not a lesser included offense. The jury found Gale guilty as charged.

At the sentencing hearing, the trial court found no mitigators and four aggravators: (1) Gale "fails to take responsibility for his actions or express any remorse but pretends to do so;" (2) "the nature and character of the defendant indicates it's likely he'll continue to commit crimes...."; (3) Gale's extensive criminal history; and (4) Gale has previously violated probation and home detention. Transcript at 731. The trial court sentenced Gale to twenty years on each rape convic-

tion, but then noted that the sentences "are to be concurrent because those crimes merge." *Id.* The trial court also sentenced Gale to one year for each of the three battery convictions and ordered the battery sentences to be consecutive to the rape sentence for an aggregate sentence of twenty-three years.

## I.

◼ The first issue is whether the trial court erred by refusing Gale's request for an instruction on sexual battery as a class D felony. According to Gale, sexual battery as a class D felony is an included offense of rape because sexual battery "differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person ... is required to establish its commission." Ind.Code § 35–41–1–16(3). Thus, according to Gale, the trial court should have instructed the jury regarding sexual battery as a class D felony.

◼ In *Wright v. State,* 658 N.E.2d 563, 566–567 (Ind.1995), the Indiana Supreme Court clarified the circumstances under which a trial court should instruct a jury on a lesser included offense of the crime charged and set forth a three-part test. First, the trial court should determine whether the lesser offense is inherently included in the charged offense. 658 N.E.2d at 566. If the offense is not inherently included, then the trial court should determine if it is factually included in the charged offense. *Id.* at 567. Finally, if the offense is either inherently or factually included in the charged offense, the court should examine the evidence and determine whether there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense. *Id.*

Where a trial court makes a finding as to the existence or absence of a substantial evidentiary dispute, we review the trial court's rejection of a tendered instruction for an abuse of discretion. *Brown v. State,* 703 N.E.2d 1010, 1019 (Ind.1998). However, if the trial court rejects the tendered instruction on the basis of its view of the law, as opposed to its finding that there is no serious evidentiary dispute, appellate review of the ruling is de novo. *Id.*

◼ We need not address the first two *Wright* steps because, even if sexual battery were an included offense here, the trial court correctly found no serious evidentiary dispute. Under the third step, "if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, it must look at the evidence presented in the case by both parties." *Wright,* 658 N.E.2d at 567. "If there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually included lesser offense." *Id.* "If the evidence does not so support the giving of a requested instruction on an inherently or factually included lesser offense, then a trial court should not give the requested instruction." *Id.*

Gale contends that the evidence presented "could have proven sexual battery without proving rape." Appellant's Brief at 25. Gale argues that several witnesses said they did not observe penetration. However, numerous witnesses actually saw Gale having sexual intercourse with M.A. while she was unconscious and described seeing penetration. Additionally, our review of the testimony reveals that each of the witnesses cited by Gale did not see penetration but actually saw Gale on top of

M.A. with his pants down making motions consistent with sexual intercourse. We conclude that there was no serious evidentiary dispute about whether Gale had sexual intercourse with M.A.[4] *See, e.g., Spann v. State*, 850 N.E.2d 411, 415–416 (Ind.Ct. App.2006) (finding no serious evidentiary dispute when the defendant argued that the jury should have been instructed on battery as a class B misdemeanor during his child molesting trial). Accordingly, we conclude that the trial court did not abuse its discretion by denying Gale's request for an instruction regarding sexual battery as a class D felony. *See, e.g., Washington v. State*, 808 N.E.2d 617, 626 (Ind.2004) (holding that the trial court did not abuse its discretion by refusing to give the defendant's tendered instruction on voluntary manslaughter).

## II.

■ The next issue is whether the trial court committed fundamental error when instructing the jury on the elements of rape. Gale contends that the instruction regarding the elements of rape in Count I failed to instruct the jury that the mens rea should have been applied to every material element of the offense. Gale makes no argument regarding the instruction for the second rape charge. Gale does not dispute that he neither objected to the instruction nor tendered his own instruction. However, Gale contends that the instruction resulted in fundamental error.

■ "In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process." *Ortiz v. State*, 766 N.E.2d 370, 375 (Ind. 2002). The error must be so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* In considering whether a claimed error denied the defendant a fair trial, we determine whether the resulting harm or potential for harm is substantial. *Id.*

The trial court instructed the jury regarding the elements of the first rape charge as follows:

> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant
> 2. knowingly or intentionally
> 3. had sexual intercourse with [M.A.] when
> 4. [M.A.] was unaware that sexual intercourse was occurring.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty of Rape, a Class B Felony, charged in Count 1.

Appellant's Appendix at 166.[5]

Gale contends that the instruction is erroneous because it does not instruct the jury that Gale had to have sexual intercourse with M.A. "knowing that she was unaware that he was doing so." Appellant's Brief at 31. In other words, Gale had to "know that M.A. [was] unaware." *Id.* In support of his argument, Gale cites

---

4. Gale also argues that a serious evidentiary dispute exists because the trial court agreed to instruct the jury regarding attempted rape. According to Gale, this implies that a serious evidentiary dispute existed regarding whether Gale actually had sexual intercourse with M.A. Regardless of the trial court's attempted rape instruction, we conclude, as noted above, that there is no serious evidentiary dispute as to whether Gale had sexual intercourse with M.A.

5. The trial court's instruction was based upon the Indiana Pattern Jury Instruction–Criminal No. 3.29.

Ind.Code § 35–41–2–2(d), which provides: "Unless the statute defining the offense provides otherwise, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct."

Although not cited by Gale or the State, this issue was addressed in *Bozarth v. State*, 520 N.E.2d 460, 464 (Ind.Ct.App. 1988), *reh'g denied, trans. denied*, where we noted:

The previous Indiana statute governing rape included the element that the defendant knew of the victim's mental condition. IC 35–13–4–3 (repealed 1976); *see also Underhill v. State* (1921), 190 Ind. 558, 130 N.E. 225. This is the majority rule in other jurisdictions. Annot., 31 A.L.R.3D 1227 (1970). Indiana's present statute also includes a "knowing" element. A person "knowingly" engages in conduct when he is aware of a high probability that he is doing so. IC 35–41–2–2(b) (1982). Thus, the actor must be aware of a high probability that the victim is mentally disabled and unable to consent to sexual intercourse.

Similarly, Gale had to be aware of a high probability that M.A. was unaware that sexual intercourse was occurring.

Even if we assume that the instruction, as given, did not reflect that Gale had to be aware of a high probability that M.A. was unaware that sexual intercourse was occurring, the challenged instruction did not result in fundamental error. As evidence that he was prejudiced by the instruction, Gale argues that M.A. could have consented and later passed out, and Gale points to testimony that he told the National Guardsmen, "It's cool, dude, it's consensual." Transcript at 326. The evidence presented at the trial demonstrated that Gale kept buying M.A. drinks in the bar, but M.A. was not interested in Gale. M.A. was extremely intoxicated when she left the bar, and she had to be assisted to her friend's vehicle. Gale followed M.A. and asked for her phone number, but she did not give Gale her phone number. At this point, M.A. was "in and ou[t] of consciousness." Transcript at 170. Gale kept asking for "five minutes alone" with M.A., but her friends refused. *Id.* At one point, when Gale said that he wanted five minutes alone with M.A., M.A. grabbed Andy's shirt and shook her head no. Gale then hit Jeremy and pushed Andy and Jesse. At that point, M.A. was unconscious in the back of Andy's vehicle. Andy, Jesse, and Jeremy then went three or four parking spots away to call for help. Shortly thereafter, Gale was found having sexual intercourse with M.A., who was not making any movement or sound, had her eyes closed, and did not respond to efforts to talk to her. M.A.'s blood alcohol level was found to be 0.309.

There was substantial evidence presented at trial that M.A. was unaware that sexual intercourse was occurring and that Gale was aware of her condition. Moreover, this issue was not even raised during closing arguments. Rather, Gale claimed that no intercourse had occurred. We conclude that the claimed error in the rape instruction did not deny Gale a fair trial. Any error in the instruction did not result in or have the potential for substantial harm. *See, e.g., Boesch v. State*, 778 N.E.2d 1276, 1280 (Ind.2002) (holding that, despite an erroneous instruction, it was "highly improbable that the jury" was "misled as to an accurate legal understanding of sudden heat and its significance" and the instruction did not result in fundamental error), *reh'g denied.*

III.

The next issue is whether the evidence is sufficient to sustain Gale's convictions for rape. When reviewing claims of insuf-

ficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

The offense of rape is governed by Ind. Code § 35–42–4–1(a), which provides:

[A] person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

\*   \*   \*   \*   \*   \*

(2) the other person is unaware that the sexual intercourse is occurring; or

(3) the other person is so mentally disabled or deficient that consent to sexual intercourse cannot be given;

commits rape, a Class B felony.

Here, the State charged Gale with two counts of rape. The informations alleged that Gale "did knowingly have sexual intercourse with [M.A.] when such person was unaware that sexual intercourse was occurring" and that Gale "did knowingly have sexual intercourse with [M.A.] when such person was so mentally disabled or deficient that consent to said intercourse

could not be given." Appellant's Appendix at 10–11. The jury found Gale guilty of both counts of rape, and the trial court entered judgment of conviction on both guilty verdicts.

### A. *Count I: Unaware that Sexual Intercourse Was Occurring.*

■ Gale contends that the evidence was insufficient to prove that M.A. did not consent and later pass out during the sexual intercourse. Gale contends that no evidence was presented that M.A. was unconscious at the start of the sexual intercourse.[6] The evidence is clearly against Gale on this point.

As noted above, there was evidence presented that M.A. was unconscious in the back of Andy's vehicle when Gale started the fight with Andy, Jesse, and Jeremy. Shortly thereafter, Gale was found having sexual intercourse with M.A., who was not making any movement or sound, had her eyes closed, and did not respond to efforts to talk to her. M.A.'s blood alcohol level was found to be 0.309. Gale's argument is merely a request that we reweigh the evidence, which we cannot do. In his reply brief, Gale contends that "[t]his is not a question of reweighing evidence. There was no reliable evidence that M.A. recalled not consenting." Reply Brief at 5. Gale focuses upon M.A.'s testimony but ignores the substantial amount of circumstantial

---

6. In his appellant's brief, Gale argues:

Gale is probably not the first male, whether intoxicated or not, who failed to notice whether his female partner, whether intoxicated or not, was having a good time or even awake. But that would make him oblivious—not necessarily a criminal—unless the question is simply whether he is engaged in intercourse and his partner becomes at some point "unaware" either by falling asleep or passing out.

Appellant's Brief at 30–31. Further, he contends that this conduct "was boorish but is not usually considered rape." *Id.* at 17.

Gale continues this line of argument in his reply brief, where he contends:

If M.A. consented at the beginning (as she might well have done), Gale is undoubtedly not the first man who has had his partner fall asleep after intercourse lawfully began. It might even be expected to be a regular feature of intercourse late in the day with women who have grossly overindulged in alcohol or drugs.

Appellant's Reply Brief at 7. While we understand the point Gale is attempting to make, such literary flourishes do little to advance his positions on the issues.

evidence that M.A. was unconscious during the sexual intercourse.

We conclude that evidence of probative value from which a reasonable jury could have found Gale guilty beyond a reasonable doubt of rape for having sexual intercourse with M.A. when she was unaware that sexual intercourse was occurring. *See, e.g., Glover v. State,* 760 N.E.2d 1120, 1125 (Ind.Ct.App.2002) (holding that the evidence was sufficient to prove that the defendant had sexual intercourse with the victim while she was unaware that the act of intercourse was occurring), *trans. denied; Becker v. State,* 703 N.E.2d 696, 698 (Ind.Ct.App.1998) ("[I]t is the general, if not universal, rule that if a man has intercourse with a woman while she is asleep, he is guilty of rape because the act is without her consent.").

### B. *Mentally Disabled or Deficient*

■ Gale also seems to argue that the evidence was insufficient to show that M.A. was so mentally disabled or deficient that consent could not be given. Gale's sole argument on this issue is that "[t]here was … no evidence to suggest—let alone prove beyond a reasonable doubt—that M.A. was 'so mentally disabled or deficient that consent to sexual intercourse cannot be given.'" Appellant's Brief at 14. Gale focuses upon a statement made by the prosecutor at the sentencing hearing that the State had hoped to have M.A. testify as to whether she consented to the sexual intercourse but M.A. was unable to remember the events probably due to her intoxication. The prosecutor's statement simply has no relevance as to whether the evidence was sufficient to prove that M.A. was so mentally disabled or deficient that consent to sexual intercourse could not be given.

The State presented evidence that M.A. was highly intoxicated when she left the bar and had to be assisted to the vehicle. M.A. was drifting in and out of consciousness, and, when Gale started a fight with her friends, she was unconscious in the backseat. M.A.'s blood alcohol level was later found to be 0.309. We conclude that the State presented evidence of probative value from which a reasonable jury could have found Gale guilty beyond a reasonable doubt of rape for having sexual intercourse with M.A. when she was so mentally disabled or deficient that consent to sexual intercourse could not be given. *See, e.g., Hancock v. State,* 758 N.E.2d 995, 1004 (Ind.Ct.App.2001) (holding that the evidence was sufficient to sustain the defendant's convictions for rape and criminal deviate conduct where the State charged that the victim was so mentally disabled or deficient "by reason of ingesting Xanax" that consent could not be given), *vacated in part and summarily affirmed in relevant part by Hancock v. State,* 768 N.E.2d 880, 880 (Ind.2002).

### IV.

■ The next issue is whether the trial court abused its discretion in sentencing Gale. We note that Gale's offenses were committed after the April 25, 2005, revisions of the sentencing scheme. In clarifying these revisions, the Indiana Supreme Court has held that "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State,* 868 N.E.2d 482, 490 (Ind.2007), *clarified on reh'g,* 875 N.E.2d 218 (Ind.2007). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

■ A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing

statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." *Id.* at 490–491. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, under the new statutory scheme, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

The trial court found no mitigators and four aggravators: (1) Gale "fails to take responsibility for his actions or express any remorse but pretends to do so;" (2) "the nature and character of the defendant indicates it's likely he'll continue to commit crimes . . . ."; (3) Gale's extensive criminal history; and (4) Gale has previously violated probation and home detention. Transcript at 731.

■■■■ Gale seems to argue that the trial court abused its discretion by using his failure to take responsibility and feigned remorse as an aggravator. Gale seems to contend that the evidence was disputed as to M.A.'s consent and "[t]here was no reason for Gale to take responsibility for this 'lack of consent' offense." Appellant's Brief at 37. However, the trial court properly pointed out that in the presentence investigation report Gale stated, "I didn't do it and their [sic] was no forensic evidence to prove my charges." Appellant's Appendix at 237. Gale denied having sexual intercourse with M.A., and Gale

also stated, "Whatever (sentence) they give me, I'll give back to them.. I will win on appeal." *Id.* At sentencing, Gale told the trial court that the "past year [had] been a life changing experience," he apologized to M.A. and his family, and he asked for forgiveness. Transcript at 721–722. The trial court found Gale's remorse to be feigned. "A trial court may find a defendant's lack of remorse to be an aggravating factor." *Veal v. State,* 784 N.E.2d 490, 494 (Ind.2003). We find no abuse of discretion as to the trial court's use of this aggravator.

■■■■ We sua sponte note that the trial court entered judgment of conviction on both rape verdicts. At the sentencing hearing, the trial court noted that "both convictions for Rape merge" and sentenced Gale to twenty years for each conviction but ordered that the sentences be concurrent. Transcript at 731. However, the trial court's sentencing order indicates the following regarding his sentence: ,

> The Court finds that the convictions for Counts 1 and 2 merge. The defendant shall be committed to the Indiana Department of Correction for a period of twenty (20) years for merged Count 1, Rape, a Class B Felony and for Count 2, Rape, a Class B Felony.

Appellant's Appendix at 202. The Indiana Supreme Court has held that when two or more charges constitute the same offense for double jeopardy purposes, the defendant may not be punished on all the charges and "a judgment of conviction [constitutes] punishment even if the defendant avoids imprisonment." *Carter v. State,* 750 N.E.2d 778, 780 (Ind.2001). "The merger after judgments of conviction have been entered does not cure the double jeopardy violation." *Morrison v. State,* 824 N.E.2d 734, 742 n. 5 (Ind.Ct.App.2005), *trans. denied.* Consequently, the judgment of conviction entered on both rape

verdicts constituted a punishment for double jeopardy purposes, and the trial court erred by entering judgment of conviction on both counts. Consequently, one of the rape convictions must be vacated. We order that the second rape conviction relating to Gale having sexual intercourse with M.A. when she was so mentally disabled or deficient that consent to sexual intercourse could not be given be vacated. *See, e.g., id.* at 742.

## V.

■ The last issue is whether the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006). Gale requests that we impose the advisory sentence of ten years for his rape conviction and that we impose concurrent sentences for his battery convictions.

Our review of the nature of the offense reveals that Gale repeatedly bought M.A. drinks at the bar that evening and became angry when she would not leave with him.[7] Gale followed an extremely intoxicated M.A. out of the bar and confronted her friends, asking for "five minutes alone" with M.A. Transcript at 170. When her friends refused, Gale became physically violent with them. While M.A.'s friends called for assistance, Gale got into the

backseat where M.A. was passed out and had sexual intercourse with her. Even when confronted by National Guardsmen, Gale did not stop having sexual intercourse with M.A., who had her eyes closed and was not responding to the National Guardsmen. Gale did not stop his actions until someone said that the police had been called and one of the Guardsmen threatened a citizen's arrest. Gale then stood up, pulled up his pants, and ran until he was tackled by numerous people in the bar's parking lot. Gale injured two men while they were trying to restrain him until the police arrived. M.A. had numerous bruises and abrasions, including bruises on her inner thighs, some abrasions and contusions on her legs, and large bruises on her arms. We must disagree with Gale's assertions that his "behavior was expected behavior" and that the only thing unusual about his actions was his persistence. Appellant's Brief at 44.

Our review of the character of the offender reveals that twenty-eight-year-old Gale has a significant criminal history, including a juvenile adjudication for resisting law enforcement, and adult convictions for resisting law enforcement as a class A misdemeanor, theft as a class A misdemeanor, battery as a class A misdemeanor, two counts of criminal conversion as class A misdemeanors, theft as a class D felony, driving while suspended as a class A misdemeanor, operating a vehicle without a license as a class C misdemeanor, conversion as a class A misdemeanor, and driving while suspended as a class A misdemeanor. Gale had pending charges for trespass as a class A misdemeanor, battery as a class A misdemeanor, resisting law en-

---

7. Gale suggests in his reply brief that his anger was expected behavior where M.A. "had accepted all those drinks with thanks and not objected to a hand on her knee. One suspects that a lot of people have gone home angry under similar circumstances." Appellant's Reply Brief at 16. Gale's argument is unpersuasive, however, because he chose not to go home angry but, instead, to have sexual intercourse with an unconscious woman.

forcement as a class A misdemeanor, and criminal mischief as a class B misdemeanor. Gale has, in the past, violated his probation and home detention. The probation officer noted that Gale had "a history of becoming belligerent with authority figures whether they be school teachers, police officers, detention center staff, probation officers, or jail staff" and that Gale "has a history of contentious relationships with family and significant others." Appellant's Appendix at 246. This history of contentious relationships is evidenced by the numerous protective orders issued against him in the past.

After due consideration of the trial court's decision, we cannot say that the twenty-three-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. *See, e.g., Matshazi v. State,* 804 N.E.2d 1232, 1242 (Ind.Ct.App. 2004) (holding that the maximum sentence for rape was not inappropriate), *trans. denied.*

For the foregoing reasons, we vacate the judgment of conviction entered for Count II, rape as a class B felony, but affirm Gale's convictions and sentences for Count I, rape as a class B felony, and three counts of battery as class A misdemeanors.

Affirmed in part and vacated in part.

BARNES, J. and VAIDIK, J. concur.