

**FILED**

Feb 23 2024, 8:37 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Oscar Contreras Zamilpa, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | February 23, 2024 <br><br> Court of Appeals Case No. <br> 23A-CR-1309 <br><br> Appeal from the Vanderburgh <br> Superior Court <br><br> The Honorable Robert J. Pigman, <br> Judge <br><br> Trial Court Cause No. <br> 82D03-2202-F3-001011 |

**Opinion by Judge May**
Judges Bailey and Felix concur.

**May, Judge.**

[1] Oscar Contreras Zamilpa appeals his convictions of Level 3 felony rape,[1] Level 5 felony criminal confinement,[2] and three counts of Level 6 felony sexual battery.[3] Zamilpa presents two issues for appeal, which we revise, reorder, and restate as:

> 1. Whether the trial court violated Zamilpa's protection against substantive double jeopardy by entering convictions of:
>
>> 1.1 both rape and criminal confinement, and
>>
>> 1.2 three counts of sexual battery; and
>
> 2. Whether Zamilpa's sentence is inappropriate given the nature of his offenses and his character.

We affirm in part, reverse in part, and remand.

## Facts and Procedural History

[2] Zamilpa and C.M. were both residents of an assisted living facility in Evansville, Indiana. They lived in separate apartments on the facility's third floor, and they would occasionally spend time together in a lobby located at the end of the hallway. On February 18, 2022, C.M. told Zamilpa that she was

---

[1] Ind. Code § 35-42-4-1(a) (2014).

[2] Ind. Code § 35-42-3-3(b)(1) (2019).

[3] Ind. Code § 35-42-4-8(a) (2014).

replacing a loveseat in her apartment with a new sofa, and she offered her old loveseat to Zamilpa. Zamilpa said that he did not think he had enough room in his apartment, but he invited C.M. to his apartment for her to see if there was enough room for the loveseat.

[3] After C.M. entered Zamilpa's apartment, Zamilpa closed his apartment door and shoved C.M. against the wall. Zamilpa took C.M.'s walker and "slung" it into another room. (Tr. Vol. II at 79.) Zamilpa pulled C.M.'s hair and licked her neck. He also took off her top and bra and started "sucking tight" or "biting" her breasts. (*Id*.) In addition, Zamilpa pulled down C.M.'s pants. C.M. fought him and "kept saying please stop it. Leave me alone! I don't want you doing this. Please leave me alone." (*Id*.) However, Zamilpa continued assaulting C.M. He took his penis out of his pants and tried to insert it into C.M.'s vagina. Zamilpa scratched C.M.'s vagina with his fingernails while trying to insert his penis into her vagina. The assault stopped when another resident knocked on Zamilpa's apartment door. Zamilpa answered the door, and the woman told Zamilpa that she had soup for him in her apartment. Zamilpa and C.M. exited Zamilpa's apartment shortly thereafter. Zamilpa left to eat his soup, and C.M. sat down in the lobby. Other residents stopped and talked with C.M. while she was sitting in the lobby, and she told them about the incident with Zamilpa.

[4] Someone reported the incident using an anonymous tipline, and Officer Jacob Hassler of the Evansville Police Department went to the assisted living facility to investigate. Officer Hassler spoke with C.M. and advised her to go to the

hospital. At the hospital, a nurse performed a sexual assault examination on C.M. The nurse observed bruises on C.M.'s breasts and abrasions in C.M.'s vaginal area. The nurse also collected DNA samples from C.M. during the examination, and the samples revealed the presence of Zamilpa's DNA on C.M.'s left breast, right breast, and neck. The external genital swabs of C.M.'s vagina indicated the possible presence of male DNA, but the quantity was insufficient to determine whether the DNA belonged to Zamilpa. Detective Robert Waller interviewed Zamilpa at the police station, and Zamilpa denied having sexual contact with C.M. Detective Waller noticed during the interview that Zamilpa's fingernails were freshly cut.

[5] On February 23, 2022, the State charged Zamilpa with Level 3 felony attempted rape, Level 5 felony criminal confinement, and three counts of Level 6 felony sexual battery. On February 17, 2023, the State amended the charging information to change the Level 3 felony charge from attempted rape to rape. The trial court then held a jury trial beginning on April 13, 2023. During the State's opening statement, the deputy prosecutor explained the charges to the jury:

> Rape, it's where he put his finger inside her vagina . . . I have him charged with Criminal Confinement for keeping her against the wall so she can't leave. I have him charged with three counts of Sexual Battery. One for her left breast, one for right breast, and one for where he tried to insert his penis into her vagina.

(*Id*. at 26.) The State presented surveillance footage from the hallway of the assisted living community that showed C.M. entered Zamilpa's apartment at

approximately 5:02 p.m. on February 18, 2022, and the woman knocked on Zamilpa's door to tell him about the soup at approximately 5:09 p.m. The jury returned a verdict finding Zamilpa guilty as charged, and the trial court entered a judgment of conviction on each count.

[6] The trial court held Zamilpa's sentencing hearing on May 12, 2023. C.M. testified at the sentencing hearing that after Zamilpa assaulted her, she began "having a fear of being out in the open around other people[.]" (*Id*. at 143.) C.M. also testified that prior to the assault, she and another resident had "told the office about [Zamilpa] grabbing at our legs and . . . our heinies and everything like that" but the assisted living facility did not act on their complaints. (*Id*. at 145.) The trial court found C.M.'s advanced age and infirmity and Zamilpa's criminal record to be aggravating factors. The trial court also commented that "[t]he nature and circumstances of the offense are aggravating" and noted that C.M.'s wounds "were still bleeding five hours after the assault[.]" (*Id*. at 158.) The trial court did not find any mitigating factors. The trial court sentenced Zamilpa to a term of twelve years for his Level 3 felony rape conviction, four years for his Level 5 felony criminal confinement conviction, and two years for each of his three Level 6 felony sexual battery convictions. The trial court ordered Zamilpa to serve all the sentences concurrently, for an aggregate term of twelve years.

# Discussion and Decision

# 1. Double Jeopardy

Zamilpa asserts the trial court violated his protection against substantive double jeopardy by, first, entering convictions of both criminal confinement and rape, and second, by entering convictions of three counts of sexual battery. We review such challenges de novo. *Hessler v. State*, 213 N.E.3d 511, 524 (Ind. Ct. App. 2023), *trans. denied*.

## *1.1 Convictions of Criminal Confinement and Rape*

Both the Indiana Constitution[4] and the United States Constitution[5] prohibit double jeopardy. Initially, this protection served only as a procedural bar to a subsequent prosecution for the same offense following an acquittal or conviction, but "[o]ver time, the protection evolved beyond the procedural context to embody a substantive bar to multiple convictions or punishments for the same offense in a single trial." *Wadle v. State*, 151 N.E.3d 227, 235 (Ind. 2020). In *Wadle*, our Indiana Supreme Court announced a new framework for analyzing substantive double jeopardy challenges when the defendant's criminal conduct implicates multiple criminal statutes. *Id.* The Court explained:

> This framework, which applies when a defendant's single act or transaction implicates **multiple** criminal statutes (rather than a

---

[4] "No person shall be put in jeopardy twice for the same offense." Ind. Const. Art. 1, § 14.

[5] "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V.

single statute), consists of a two-part inquiry: First, a court must determine, under our included-offense statutes, whether one charged offense encompasses another charged offense. Second, a court must look at the underlying facts—as alleged in the information and as adduced at trial—to determine whether the charged offenses are the "same." If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, "included" in the other. But if the facts show only a single continuous crime, and one statutory offense is included in the other, then the presumption is that the legislation intends for alternative (rather than cumulative) sanctions. The State can rebut this presumption only by showing that the statute—either in express terms or by unmistakable implication—clearly permits multiple punishment.

*Id*. (emphasis in original).

[9] With the *Wadle* framework in mind, our first step in analyzing Zamilpa's challenge to the trial court's entry of judgments of conviction for both rape and criminal confinement is to determine whether the crime of rape encompasses criminal confinement. Here, the statute prohibiting rape, in relevant part, states:

a person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct (as defined in IC 35-31.5-2-221.5) when:

(1) the other person is compelled by force or imminent threat of force;

* * * * *

commits rape, a Level 3 felony.

Ind. Code § 35-42-4-1. Indiana Code section 35-31.5-2-221.5 states: "'Other sexual conduct' means an act involving: (1) a sex organ of one (1) person and the mouth or anus of another person; or (2) the penetration of the sex organ or anus of a person by an object." The statute outlawing criminal confinement provides: "A person who knowingly or intentionally confines another person without the other person's consent commits criminal confinement." Ind. Code § 35-42-3-3(a). The offense is a Level 5 felony if "it results in bodily injury to a person other than the confining person[.]" Ind. Code § 35-42-3-3(b)(1)(C). Neither statute clearly permits multiple punishment.

[10] We look to "the included offense statutes to determine whether one offense is included in the other, either inherently or as charged." *Hendricks v. State*, 162 N.E.3d 1123, 1139 (Ind. Ct. App. 2021), *reh'g denied*, *trans. denied*. Indiana Code section 35-38-1-6 states: "Whenever . . . a defendant is charged with an offense and an included offense in separate counts; and . . . the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." Our legislature has defined an included offense as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

Ind. Code § 35-31.5-2-168.

[11] It is the first category of included offense that is relevant to this case. While the rape statute does not explicitly recite confinement as an element of the offense, the act of forcible rape necessarily entails some degree of confinement. *See Griffin v. State*, 583 N.E.2d 191, 194-95 (Ind. Ct. App. 1991) ("If a person is forcibly raped, or raped by the threat of force—the element of force—whether actual, threatened, or constructive, constitutes the crime of confinement defined as a substantial interference with a person's liberty."), *reh'g denied*. We held in *Stover v. State* that the State presented insufficient evidence to support the defendant's conviction of criminal confinement when the State failed to prove the defendant confined the victim beyond what was inherent in the act of rape. 621 N.E.2d 664, 668 (Ind. Ct. App. 1993). Conversely, in *Parks v. State*, we held the defendant's convictions of both rape and criminal confinement did not run afoul of Indiana Code section 35-38-1-6 because the defendant confined the victim beyond what was necessary to effectuate the rape. 734 N.E.2d 694, 701 (Ind. Ct. App. 2000), *trans. denied*. Thus, the offense of criminal confinement may constitute an included offense of rape. If Zamilpa's acts of criminal confinement and rape were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction," then entering convictions of both offenses constitutes double jeopardy. *Wadle*, 151

N.E.3d at 249. "If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, 'included' in the other." *Id.*

[12] The State urges us to confine our analysis of whether the crimes of criminal confinement and rape constitute separate and distinct crimes to the charging information, and the State argues "there is nothing in the charging information suggesting that the same force was used to commit criminal confinement and rape." (Appellee's Br. at 14.) However, there is also nothing in the charging information differentiating the force used to commit criminal confinement from the force used to commit rape. The trial court recited the charging information in its preliminary jury instructions:

> The Information in Count 1, omitting the formal parts, reads as follows:
>
> In Vanderburgh County, State of Indiana, on or about February 18, 2022, Oscar Contreras Zamilpa did knowingly or intentionally have other sexual conduct with [C.M.]; when such person was compelled by force or the imminent threat of force.
>
> The Information in Count 2, omitting the formal parts, reads as follows:
>
> In Vanderburgh County, State of Indiana, on or about February 18, 2022, Oscar Contreras Zamilpa did knowingly or intentionally confine [C.M.] without the consent of [C.M.], said act resulting in bodily injury to [C.M.].

(App. Vol. II at 60.) We cannot determine from the charging information whether the two offenses are separate and distinct. Therefore, we must look at how the State presented the charges at trial and the facts adduced at trial to determine whether the offenses are the same. *See, e.g., Thurman v. State*, 158 N.E.3d 372, 378 (Ind. Ct. App. 2020) (noting the charging information did not indicate that the facts underlying three charges were different and looking at the State's closing argument and the facts adduced at trial to determine whether the offenses were separate and distinct crimes).

[13] The only time the deputy prosecutor directly addressed the evidence underlying the criminal confinement charge was during the State's opening statement when he stated: "I have him charged with Criminal Confinement for keeping her against the wall so she can't leave." (Tr. Vol. II at 26.) Based on this comment, Zamilpa argues that "the act of holding C.M. against the wall was part of one singular act that constituted the rape." (Appellant's Br. at 15.) The State counters that despite the deputy prosecutor's minimal explanation, the facts adduced at trial still support both convictions because Zamilpa's act of pinning C.M. against the wall "extended for a period far beyond what was necessary to commit rape because [Zamilpa] also held C.M. in place against the wall as he battered her breasts and licked her neck." (Appellee's Br. at 16.)

[14] However, we cannot confidently say that the jury parsed the facts in the same sort of highly technical manner the State advances on appeal. The pre-*Wadle* actual evidence test required us to evaluate the evidence from the jury's perspective. *Hines v. State*, 30 N.E.3d 1216, 1222 (Ind. 2015). We considered

the charging information, the arguments of counsel, the jury instructions, and any other factors that may have guided the jury's determination. *Id*. Our objective was to ensure there was no "reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of an offense for which the defendant was convicted or acquitted may also have been used to establish all the essential elements of a second challenged offense." *Id*. If the State did not present the facts in a way that forced the jury to distinguish between the two crimes before declaring the defendant guilty of both, we would not uphold both convictions. *See*, *e.g.*, *id*. at 1223 (holding defendant's convictions of both criminal confinement and battery constituted double jeopardy when "at trial the State failed to specifically allege and communicate to the jury what different evidence supported what charge" and there was a reasonable possibility that the jury based the battery conviction and the criminal confinement conviction on one continuous assault).

[15] More recently, we have interpreted the second step of the *Wadle* analysis to require both that the State present the crimes as separate and distinct to the jury and that the facts show that the two crimes are separate and distinct. In *Phillips v. State*, the trial court entered convictions of both possession of methamphetamine and dealing in methamphetamine, and we vacated the defendant's possession of methamphetamine conviction because the methamphetamine the State alleged the defendant possessed was the same methamphetamine the State charged him with dealing. 174 N.E.3d 635, 647 (Ind. Ct. App. 2021). We noted "the State specifically advised the jury during

closing statements that '[i]f you're dealing you're in possession' when describing the evidence of the two offenses." *Id.* Likewise, in *Harris v. State*, we vacated the defendant's pointing a firearm conviction when the State stated in its closing argument that it was relying on the defendant's single act of pointing a handgun at the victim to support convictions of both pointing a firearm and intimidation with a deadly weapon. 186 N.E.3d 604, 612 (Ind. Ct. App. 2022). Because neither the charging information nor the way the State presented the charges to the jury differentiated between the force Zamilpa used in raping C.M. and the additional degree of force meant to support the criminal confinement conviction, we hold the trial court erred in entering convictions of both rape and criminal confinement. *See*, *e.g.*, *D.M. v. State*, 222 N.E.3d 404, 410 (Ind. Ct. App. 2023) (holding juvenile court's true findings of both possession of a firearm on school property and dangerous possession of a firearm violated the prohibition against double jeopardy because both findings were premised on the defendant possessing the same firearm on the same day and during the same period). We affirm Zamilpa's rape conviction but reverse his criminal confinement conviction. *See Demby v. State*, 203 N.E.3d 1035, 1046 (Ind. Ct. App. 2021) ("Where a defendant is found guilty of both the greater offense and the lesser-included offense, the proper procedure is to vacate the conviction for the lesser-included offense and enter a judgment of conviction and sentence only upon the greater offense."), *trans. denied*.

## 1.2 Three Convictions of Sexual Battery

[16] Zamilpa's second substantive double jeopardy challenge concerns the trial court's entry of three convictions of sexual battery. He asserts he "was punished thrice for the same conduct" and "the acts were so compressed in time, place, singleness of purpose and continuity of action as to constitute a single transaction." (Appellant's Br. at 8.)

[17] On the same day that our Indiana Supreme Court decided *Wadle*, it also laid out the framework for deciding substantive double jeopardy claims "when a single criminal act or transaction violates a single statute and results in multiple injuries." *Powell v. State*, 151 N.E.3d 256, 263 (Ind. 2020). The Court decreed that such substantive double jeopardy claims should be analyzed using a two-step inquiry:

> First, we review the text of the statute itself. If the statute, whether expressly or by judicial construction, indicates a unit of prosecution, then we follow the legislature's guidance and our analysis is complete. But if the statute is ambiguous, then we proceed to the second step of our analysis.
>
> Under this second step, a court must determine whether the facts—as presented in the charging instrument and as adduced at trial—indicate a single offense or whether they indicate distinguishable offenses. To answer this question, we ask whether the defendant's actions are so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction. If the defendant's criminal acts are sufficiently distinct, then multiple convictions may stand; but if those acts are continuous and indistinguishable, a court may

> impose only a single conviction. Any doubt counsels against turning a single transaction into multiple offenses.

*Id*. at 264-65 (internal footnote, quotation marks, and citations omitted).

[18] With respect to the first step of the inquiry, the Court proclaimed that when a statute does not expressly indicate a unit of prosecution, "whether a single criminal statute permits multiple punishments for multiple victims" depends upon whether the statute is conduct-based or result-based. *Id*. at 265. The Court explained that "under a conduct-based statute, a single discrete incident can be the basis for only one conviction, no matter how many individuals are harmed." *Id*. at 266 (internal quotation marks omitted). In contrast, under a result-based statute, "where several deaths or injuries occur in the course of a single incident, the prohibited offense has been perpetrated several times over. The separate victims represent different offenses because conduct has been directed at each particular victim." *Id*. (internal citation and quotation marks omitted).

[19] Both parties direct us to the *Powell* analysis to decide Zamilpa's second substantive double jeopardy claim. The State contends the sexual battery statute[6] is a result-based statute, and therefore the first step of the *Powell* analysis

---

[6] Indiana Code section 35-42-4-8(a) defines Level 6 felony sexual battery, in relevant part, as:

is dispositive. However, we do not see this case as fitting neatly in the *Powell* box. *See Jones v. State*, 159 N.E.3d 55, 67 (Ind. Ct. App. 2020) (J. Vaidik concurring) (observing that neither the *Wadle* test nor the *Powell* test applied neatly to the defendant's circumstances), *trans. denied*.

[20] "[H]ow [a] result-based statute applies when there is a single victim who suffered multiple, substantially similar injuries because of multiple instances of the same act is ambiguous." *Madden v. State*, 162 N.E.3d 549, 560 (Ind. Ct. App. 2021). In *Madden*, we faced the question of whether the trial court erred by entering two aggravated battery convictions when the defendant threw two pots of hot water at a single victim. *Id*. at 560. Even though we held the aggravated battery statute was a result-based statute, we still proceeded to the second step of the *Powell* test and analyzed whether the two instances of the defendant throwing hot water on the victim were part of the same continuous transaction. *Id*. Likewise, we look to see whether Zamilpa's three sexual batteries of C.M. were part of the same continuous transaction.

---

A person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person:

(1) touches another person when that person is:

(A) compelled to submit to the touching by force or the imminent threat of force[.]

[21] The State contends that "each time [Zamilpa] battered C.M. supports a separate sexual battery claim." (Appellee's Br. at 10.) As the State explained in its opening statement, it charged Zamilpa with a count of sexual battery for each sexual touch: "I have him charged with three counts of Sexual Battery. One for her left breast, one for her right breast, and one for where he tried to insert his penis into her vagina." (Tr. Vol. II at 26.) However, the State's argument is analogous to the argument our Indiana Supreme Court expressly rejected in *Powell* that "each pull of [the defendant's] trigger amounted to 'separate acts' designed to kill each person in [the target] car." 151 N.E.3d at 269 (citing with approval *Nunn v. State*, 695 N.E.2d 124, 125 (Ind. Ct. App. 1998) (observing that a defendant who discharges fifty rounds in "one burst" of an automatic weapon at a single victim should not be charged with and convicted of fifty attempted murders)).

[22] The three sexual touches occurred during the same assault in the same apartment and the objective of each was to satisfy Zamilpa's own sexual desires. Thus, they were part of the same continuous transaction, and the trial court should have entered only one conviction of sexual battery.[7] *Cf. Madden*, 162 N.E.3d at 560 (holding defendant's two acts of throwing hot water on the

---

[7] We also find it problematic that the trial court entered convictions of both rape and sexual battery of C.M.'s vagina because both were based on Zamilpa's finger touching C.M.'s vagina. While the acts of touching C.M.'s breasts were separate and distinct from his act of raping C.M. by inserting his finger into her vagina, his act of touching C.M.'s vagina was not separate and distinct from his act of inserting his finger into it. *See, e.g., D.M.*, 222 N.E.3d at 410 (holding juvenile's delinquency adjudications constituted double jeopardy because the facts underlying both charges constituted a single transaction). Accordingly, one of the sexual battery convictions that the trial court should vacate is the count that alleged Zamilpa battered C.M.'s vagina.

same victim did not constitute a single transaction when the two acts "did not occur at the same time, in the same place, and did not share a purpose"). Therefore, we reverse the trial court's entry of multiple convictions of sexual battery and remand with instructions for the trial court to vacate two of the three convictions. *See*, *e.g.*, *Starks v. State*, 210 N.E.3d 818, 823 (Ind. Ct. App. 2023) (reversing conviction that violated Indiana's prohibition on double jeopardy and instructing the trial court to vacate the conviction).

## 2. Inappropriate Sentence

[23] Zamilpa also contends his aggregate twelve-year sentence is inappropriate given the nature of his offenses and his character. Our standard of review regarding such claims is well-settled:

> Indiana Appellate Rule 7(B) gives us the authority to revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Our review is deferential to the trial court's decision, and our goal is to determine whether the appellant's sentence is inappropriate, not whether some other sentence would be more appropriate.

*George v. State*, 141 N.E.3d 68, 73-74 (Ind. Ct. App. 2020) (internal citations omitted), *trans. denied*. We may look at any factors appearing in the record when assessing the nature of the offense and character of the offender. *Boling v. State*, 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). The defendant bears the burden of persuading us that his sentence is inappropriate. *Hubbert v. State*, 163 N.E.3d 958, 960 (Ind. Ct. App. 2021), *trans. denied*.

[24] "Our analysis of the nature of the offense requires us to look at the nature, extent, heinousness, and brutality of the offense." *Pritcher v. State*, 208 N.E.3d 656, 668 (Ind. Ct. App. 2023). As our Indiana Supreme Court has explained, "compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality)" may lead to a downward revision of the defendant's sentence. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). When we evaluate whether a sentence is inappropriate given the nature of the offense, we first look to the advisory sentence. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). A person convicted of a Level 3 felony "shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." Ind. Code § 35-50-2-5(b). A person convicted of a Level 5 felony "shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b). A person convicted of a Level 6 felony "shall be imprisoned for a fixed term of between six (6) months and two and one-half (2 ½) years, with the advisory sentence being one (1) year." Ind. Code § 35-50-2-7.

[25] The trial court sentenced Zamilpa to a term above the advisory sentence but below the maximum sentence for each crime – twelve years for Level 3 felony rape, four years for Level 5 felony criminal confinement, and two years for Level 6 felony sexual battery. The trial court ordered Zamilpa to serve all the sentences concurrently. Therefore, even though we held above that two of Zamilpa's three sexual battery convictions and his criminal confinement

conviction should be vacated, Zamilpa's aggregate sentence remains twelve years, and we consider whether twelve years is inappropriate for convictions of Level 3 felony rape and one count of Level 6 felony sexual battery.

[26]     Zamilpa asserts that his act of inserting his finger into C.M.'s vagina was "the bare minimum to constitute the crime of rape." (Appellant's Br. at 17.) However, this characterization vastly oversimplifies the brutality of Zamilpa's crimes. Zamilpa lured C.M. into his apartment on false pretenses and shut the door after she entered. He took advantage of her lack of mobility by throwing her walker into another room. Zamilpa also continued to attack C.M. after she pleaded with him to stop and attempted to push him off her. He bruised her breasts, and he scratched her vagina with his fingernails while trying to insert his penis into it. The scratches caused C.M. severe pain, and the scratches were still bleeding when C.M. visited the hospital hours later. The nature of Zamilpa's crimes does not merit a lesser sentence. *See*, *e.g.*, *Gale v. State*, 882 N.E.2d 808, 820 (Ind. Ct. App. 2008) (holding the nature of the defendant's offense did not merit a lesser sentence when the defendant continued raping an unconscious woman after being told to stop by bystanders and the rape resulted in numerous bruises and abrasions).

[27]     We next turn to Zamilpa's character. Zamilpa argues his sentence is inappropriate given his advanced age, his physical infirmities, and his self-reported mental health issues. However, a lengthy prison sentence is not necessarily inappropriate simply because the defendant is elderly and in poor health. *See Garner v. State*, 7 N.E.3d 1012, 1016 (Ind. Ct. App. 2004) (holding

that "[w]hile we recognize that [the defendant's] age and infirmities are relevant," the defendant's sixty-year sentence was not inappropriate). In addition, "[w]hen considering the character of the offender, one relevant fact is the defendant's criminal history." *Johnson v. State*, 986 N.E.2d 852, 857 (Ind. Ct. App. 2013). "Even a minor criminal history is a poor reflection of a defendant's character." *Prince v. State*, 148 N.E.3d 1171, 1174 (Ind. Ct. App. 2020). The pre-sentence investigation report indicates Zamilpa was convicted of making a terroristic threat in California in 1997, and Zamilpa self-reported a second conviction involving an unspecified felony in California in 1979. Even though these past convictions are substantially removed in time from Zamilpa's current offenses, they still reflect poorly on his character. Thus, we cannot say Zamilpa's aggregate twelve-year sentence is inappropriate. *See*, *e.g.*, *Gale*, 882 N.E.2d at 821 (holding defendant's sentence was not inappropriate given his criminal history).

## Conclusion

[28] We affirm Zamilpa's convictions of rape and one count of sexual battery. However, we reverse his criminal confinement conviction and two of his sexual battery convictions because those additional convictions violated Zamilpa's right to be free of double jeopardy. Therefore, we remand with instructions for the trial court to vacate those three convictions.

[29] Affirmed in part, reversed in part, and remanded.

Bailey, J., and Felix, J., concur.