

ATTORNEY FOR APPELLANT

Bryan M. Truitt
Bertig & Associates, LLC
Valparaiso, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jonathan Grott, Sr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | May 7, 2015 <br><br> Court of Appeals Case No. <br> 64A04-1408-CR-395 <br><br> Appeal from the Porter Superior Court. <br> The Honorable Mary R. Harper, Judge. <br> Cause No. 64D05-1305-FD-4102 |

**Baker, Judge.**

[1] Jonathan Grott appeals his conviction for Auto Theft,[1] a class D felony, claiming that the evidence is insufficient to sustain his conviction. Finding that the evidence is sufficient, we affirm.

## Facts

[2] On February 11, 2013, Grott rented a vehicle from Enterprise Rent-A-Car (Enterprise) in Valparaiso. Grott signed a written contract, which provided that the vehicle was to be returned on February 13, 2013. At some point, Grott upgraded his rental vehicle to a Cadillac. Grott continued to rent the Cadillac until April 5, 2013. Although no new contract was written, Enterprise kept Grott's credit card on file and continued the rental by authorizing charges on the card every few days for various amounts. At the end of this fifty-three-day period, Grott had accrued charges of $4,997.09.

[3] On April 5, 2013, Grott signed a new written contract with Enterprise, which provided that Grott was to return the Cadillac on April 12, 2013. Grott paid Enterprise $719.98. On April 12, 2013, Annie Martin, an employee of Enterprise, emailed Grott, asking him if he planned on keeping the car for another week. If so, Martin indicated that she would have to run a charge on Grott's credit card. Grott responded to the email, questioning why he had been charged the original $4,997.09. In the email, Grott exaggerated the amount, claiming that it was almost $10,000. Martin informed Grott that he had not

---

[1] Ind. Code § 35-43-4-2.5.

been charged $10,000, but provided no further explanation for the charges. Grott indicated that he would contact Enterprise's corporate office.

[4] On April 15, 2013, Martin again emailed Grott, informing him that she would have to charge his card to continue the rental. Enterprise tried to charge Grott's card later that day, but the charge was declined. The next day, branch manager Robert Smolen emailed Grott, asking that he either return the vehicle or pay Enterprise in full. Smolen indicated that Enterprise may report the vehicle stolen.

[5] On April 17, 2013, Grott responded by saying that he would be calling the corporate office to attempt to clear up the payment issue and, if he could not, he would return the car. Smolen thanked him for his response, but did not hear back from Grott that day. On April 18, 2013, area manager Lindsey Sandrick called Grott. Grott agreed to make a $600 payment and to come in the next day and pay another $1,200 to continue the rental. Later that day, Martin successfully deducted $600 from Grott's credit card.

[6] On April 19, 2013, Grott did not stop by Enterprise or contact anyone at the office. Sandrick tried to contact Grott over the next couple of days but did not hear back from him. On April 24, 2013, Sandrick emailed Grott asking him to tell her where the Cadillac was so that Enterprise could come and pick it up. Grott emailed back, claiming that he thought they had agreed that he would come to the office in a couple of days to resolve the situation. Sandrick responded that this was not the case and that Enterprise needed the Cadillac

immediately. She also informed Grott that he was no longer authorized to drive the Cadillac except to return it to Enterprise. She noted that Enterprise had contacted a repossession company. On April 25, 2013, Grott emailed Sandrick, saying that he would return the Cadillac the next day. Sandrick sent an email reiterating that Grott was only authorized to drive the vehicle to Enterprise.

[7] By April 29, 2013, Grott had still not returned the Cadillac. On that day, Smolen emailed Grott, informing him that he was in violation of his rental agreement for failing to return the Cadillac by the return date. Smolen's email identified April 24, 2013, as the return date. Grott responded, arguing that he had been charged nearly $6,000 to date and that the monthly rate for rental of the Cadillac was only $1,451. Grott stated that he believed he had overpaid and that he believed Enterprise should extend his rental accordingly.

[8] On May 1, 2013, Smolen contacted the Valparaiso Police Department. Officer Christopher Allison met Smolen at the Enterprise office and discussed the matter. Officer Allison called Grott and left a voicemail. Later that afternoon, Officer Allison learned that Enterprise had used OnStar to determine that the Cadillac was parked at Grott's residence. Officer Allison went to the residence and confirmed that the Cadillac was parked in the driveway. He contacted Enterprise, who sent a tow truck to pick up the vehicle.

[9] On May 6, 2013, the State charged Grott with class D felony auto theft. On April 17, 2014, a jury found Grott guilty as charged. On July 29, 2014, the trial

court sentenced Grott to two years imprisonment with all but sixty days suspended to probation and ordered him to pay $2,240.40 in restitution to Enterprise. Grott now appeals.

## Discussion and Decision

[10] Grott argues that the evidence presented at trial is insufficient to sustain his conviction for class D felony auto theft. In reviewing a challenge to the sufficiency of the evidence, this Court neither reweighs the evidence nor assesses the credibility of the witnesses. *Tongate v. State*, 954 N.E.2d 494, 496 (Ind. Ct. App. 2011). We focus on the evidence most favorable to the verdict and the reasonable inferences drawn therefrom. *Id.* We will affirm unless no rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *Id.* at 496-97.

[11] To convict Grott of class D felony auto theft, the State was required to prove beyond a reasonable doubt that Grott knowingly or intentionally exerted unauthorized control over Enterprise's vehicle with the intent to deprive Enterprise of the vehicle's value or use. Ind. Code § 35-43-4-2.5. For purposes of this provision, "'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." I.C. § 35-43-4-1. Here, the State sought to prove that Grott exerted unauthorized control over Enterprise's Cadillac by possessing it past the agreed-upon return date.

[12]     On appeal, Grott frames his argument in general terms. He argues that this is "a civil case—pure and simple" and characterizes his dispute with Enterprise as "simply a misunderstanding." Appellant's Br. p. 4. He contends that "it was an abuse of discretion to even charge this as a criminal cause" and that "prosecutor offices [should not] be free collection attorneys to large corporations." *Id.* at 4-5. On the other hand, Grott concedes that failure to return a rental car by the agreed-upon return date can, in appropriate circumstances, rise to the level of auto theft. *Id.* at 6.

[13]     Initially, we note the limited nature of our inquiry. We do not concern ourselves with the State's decision to prosecute Grott in this instance. Although Grott passingly alleges that the State abused its discretion in deciding to prosecute him, he provides no further explanation. "Whether to prosecute and what charges to bring . . . are decisions that generally rest in the prosecutor's discretion." *Kibbey v. State*, 733 N.E.2d 991, 996 (Ind. Ct. App. 2000) (quotations omitted). Furthermore, we will not pass judgment on the propriety of Enterprise's decision to involve law enforcement in this matter. While this dispute could have conceivably ended with Enterprise's repossession of the vehicle, we do not question its right to seek the assistance of law enforcement. Instead, we deal only with the question presented on appeal: whether the evidence is sufficient to support Grott's conviction for theft.

[14]     Although Grott's argument is posed largely in general terms, two specific points can be gleaned from it. First, Grott frames this case as a good faith contract dispute. *See* Appellant's Br. p. 5, 9. Framed as such, Grott argues that he could

not have *knowingly or intentionally* exerted unauthorized control over the Cadillac because he honestly believed that such control was authorized. Nor could he have acted with the *intent to deprive* Enterprise of the vehicle's value or use—rather, his intent was simply to assure that Enterprise held up its end of the bargain. In this sense, the jury's determination of whether the State had proved all the elements of the crime required it to determine what Grott could have reasonably believed the terms of the contract to be.

[15] Second, Grott argues that the State failed to present sufficient evidence that he exerted unauthorized control over the Cadillac by failing to show that Grott "possessed" the vehicle. *See id.* at 8. Grott maintains that he stopped driving the vehicle once Enterprise told him to do so. Furthermore, because the vehicle was parked openly in Grott's driveway throughout this period, Enterprise could have simply come and picked it up. Thus, Grott argues that, while the Cadillac may have been parked in his driveway, this was not enough to show that he was exercising control over it and therefore "possessing" it in the usual sense.

[16] We note that neither party has been able to find a previous Indiana case of sufficient similarity to guide our decision today. *Mills v. State* is apparently the only instance of an Indiana appellate court finding that evidence was sufficient to convict a defendant of theft of a rental car. 512 N.E.2d 846 (Ind. 1987). In that case, Mills rented a car after falsely identifying himself and using someone else's credit card when he was not authorized to do so. *Id.* at 848. The Court determined that this, combined with the fact that Mills never paid the rental bill and the car was never returned, constituted sufficient evidence of Mills's intent

to commit theft. *Id.* As Grott's actions are easily distinguishable, *Mills* is not particularly instructive. Accordingly, we look to the decisions of other jurisdictions in similar cases for guidance.

# I. Good Faith Contract Dispute

[17] We agree with Grott that a party to a good faith contract dispute should not be convicted of theft simply because he eventually finds himself on the losing end of the dispute. Defendants who are engaged in such good faith disputes will always be able to show that they lack the requisite intent necessary to commit theft. However, we disagree with Grott that this particular dispute was conducted in good faith.

[18] The exact terms of Grott's contract with Enterprise are difficult to discern, given the manner in which the parties dealt with each other. A representative of Enterprise testified at trial that, because Enterprise provides short-term rentals rather than long-term leases, their written contracts are designed to cover only a thirty-day period. Tr. p. 83-84. If a customer wishes to extend a contract with Enterprise after the thirty-day period, it is Enterprise's policy that the customer come in and rewrite a new contract. *Id.* This also allows Enterprise to check the vehicle to ensure that it is in proper working condition. However, this was not done here, as Grott was able to extend his initial written contract over a period of fifty-three days.

[19] If an initial contract is for less than thirty days, Enterprise allows customers to extend their rental by calling a branch and authorizing a charge on their credit

card to cover the extended period. Tr. p. 84. This is primarily how Grott handled his transactions with Enterprise. The record indicates that Grott signed an initial contract on February 11, 2013, with a return date of February 13, 2013. State's Ex. 2. He was able to extend this contract for fifty-three days by authorizing charges on his credit card. Grott paid a total of $4,997.09 to Enterprise throughout this period. On April 5, 2013, Grott signed a new contract with a return date of April 12, 2013. State's Ex. 3. Grott paid $719.98 to cover this week.

[20] Problems began to develop after this second written contract was signed. On the return date of April 12, 2013, Martin emailed Grott to ask if he planned on keeping the car for another week. Defendant's Ex. 1. It was at this point that Grott began to dispute the $4,997.09 amount he had been charged for the original fifty-three-day period. *Id.* Grott made no payments to Enterprise between April 12, 2013, and April 17, 2013, though he still had the Cadillac in his possession. On April 18, 2013, Enterprise was able to charge $600 to Grott's card, but there is nothing in the record indicating that the parties agreed as to what period of time this amount covered or as to when the new return date was. *See* Defendant's Ex. 4; Tr. p. 189.

[21] Appellate courts of other states have determined that "there must be sufficient evidence of a specified deadline for return to support conviction of theft by a bailee of a rental car." *State v. Bugely*, 408 N.W.2d 394, 396 (Iowa Ct. App. 1987) (discussing similar holdings in other states). We agree with this proposition. In this case, we acknowledge the somewhat open-ended nature of

Grott's contract and the fact that there is nothing in the record indicating that a return date was agreed to after Grott's final payment. However, we still find that the jury had sufficient evidence that the parties had agreed to a deadline for the return of the Cadillac.

[22] On April 25, 2013, a week after Grott's $600 payment, Sandrick emailed Grott: "We need the vehicle returned immediately. We cannot allow you to keep the vehicle any longer. Please respond with where the vehicle is and we will pick it up." State's Ex. 4. Grott responded: "I will return the vehicle after work tomorrow . . . ." *Id.* Thus, the jury had evidence before it that Grott agreed to a return date of April 26, 2013. Grott did not return the Cadillac on that date, and it was not until Enterprise repossessed the vehicle from his driveway on May 1, 2013, that it was returned.

[23] Moreover, Grott's argument on this issue is premised on his statements in his April emails challenging Enterprise's charge for the fifty-three-day period. But Enterprise's internal emails demonstrated that Grott "br[ought] up [the] $4k charge[,] which was never an issue before," after the fifty-three-day contract had ended, and that Enterprise had "sent notification [to Grott] and made it clear that the car need[ed] to be returned." State's Ex. 6. Thus, it was the jury's prerogative to give little or no weight to Grott's assertion that his possession of the vehicle was merely an honest contractual misunderstanding as to what his payment of $4997.09 covered.

Therefore, although Grott was disputing the charges for the initial fifty-three-day period, the jury had evidence before it from which it could infer that Grott knew that charges from this fifty-three-day period did not entitle him to any extra days of rental after April 5, 2013. Grott signed a new written contract on April 5, 2013, and completed payment on the amount charged for the fifty-three-day period, thereby completing one contract and entering into another. Furthermore, Grott agreed to return the Cadillac on April 26, 2013, indicating that he knew his current rental agreement had expired. From this evidence, the jury could determine that Grott was not confused as to the terms of his contract with Enterprise, and that he intentionally exerted unauthorized control over the Cadillac with the intent to deprive Enterprise of its value or use, perhaps in an attempt to negotiate a reduction to his previous charges.

## II. Exerting Unauthorized Control

Grott next argues that the State failed to present sufficient evidence that he exerted unauthorized control over the Cadillac. To reiterate, "'exert control over property' means to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." I.C. § 35-43-4-1. Grott maintains that the State failed to provide sufficient evidence that he "possessed" the Cadillac after he was told by Enterprise to stop driving it because it was merely left sitting in his open driveway after that date.

[26] "A person who has direct and physical control over" an object "has actual possession" of it. *Tate v. State*, 835 N.E.2d 499, 511 (Ind. Ct. App. 2005). There is no serious dispute that Grott had direct and physical control over the vehicle at the relevant times; indeed, his whole argument on this issue is simply that Enterprise could have taken it out of his possession whenever it wanted to do so. But no one else was physically in possession of the vehicle while Grott was. That Enterprise had the authority to repossess the vehicle does not mean that Grott was not in possession of it. Thus, Grott had actual possession of the vehicle, and his argument to the contrary is without merit.

[27] The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.