

FILED

Dec 10 2018, 10:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie K. Boots
Darren Bedwell
Marion County Public Defender –
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony T. Mickens, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | December 10, 2018 <br><br> Court of Appeals Case No. 18A-CR-698 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Peggy R. Hart, Magistrate <br><br> Trial Court Cause No. 49G05-1704-F1-13417 |

**Mathias, Judge.**

[1]     Following a bench trial in Marion Superior Court, Anthony T. Mickens ("Mickens") was convicted of Level 3 felony criminal confinement resulting in serious bodily injury, Level 5 battery resulting in serious bodily injury, and Class A misdemeanor theft and sentenced to an aggregate term of fifteen years of incarceration. Mickens appeals and argues that the State failed to present

evidence sufficient to support his conviction for Level 3 felony criminal confinement.

We affirm.

## Facts and Procedural History

The victim in this case, A.S., began dating Mickens in late 2016, and Mickens eventually moved in to A.S.'s apartment. A.S.'s roommate did not approve of how Mickens treated A.S. and gave her an ultimatum—either Mickens would have to leave or A.S. could move out with Mickens. A.S. chose the latter option and moved with Mickens to the home of E.S., the mother of two of Mickens's children.

On February 4, 2017, one of Mickens's friends, George, came over with another man.[1] Soon thereafter, George and the other man confronted Mickens and cornered him near a door. A.S. told the two men not to harm Mickens, and approached George, who struck A.S. in the face, causing her to fall to the ground and injure her leg. A.S. asked Mickens to take her to the hospital, but he refused. The next day, A.S.'s leg had swollen to twice its original size, so she propped it up with a pillow and lay on the couch. Mickens told A.S. that, if she wanted to go to the hospital, she would have to find someone to take her, as he did not want any emergency vehicles coming to the house.

___

[1] A.S. testified that this incident occurred on the Saturday before the Super Bowl in 2017. We take judicial notice of the fact that Super Bowl LI took place on Sunday, February 5, 2017. *See* http://www.espn.com/nfl/game/_/gameId/400927752 (last visited Nov. 20, 2018).

[5] A.S. went to the hospital the following day, February 6, 2017. Tests revealed that A.S.'s leg had been broken in two separate places. When told by A.S. that the injury occurred during "events that happened at home," Tr. Vol. 2., p. 193, the treating physician informed her that the emergency room was a safe place to discuss domestic violence, but A.S. did not provide any further detail. The physician placed a cast on A.S.'s leg and prescribed Norco, a narcotic analgesic.

[6] Mickens went to the pharmacy to pick up A.S.'s prescriptions, and A.S. stayed at home with the children. When Mickens returned home, he argued with his daughter, and A.S. made dinner. When she gave Mickens a plate of food, he threw the plate at her face and called her a "bitch." *Id*. at 235. This cut A.S.'s mouth. Mickens took A.S.'s pain medication, refused to give it to her, and stated that he was going to sell it. When E.S. came to the house, she could tell that A.S. had been crying and told Mickens to stop being mean to A.S. This request went unheeded.

[7] At approximately 11:00 p.m. that night, Mickens attacked A.S. He struck her approximately eighteen times as he screamed at her. Mickens's daughter sent E.S. a message asking her to call the police because her father was attacking A.S. Mickens saw this and took his daughter's phone away and hid it. Mickens told A.S. to leave, but A.S. responded that she was the one watching the children. Furthermore, E.S. had told A.S. that the house belonged to her (E.S.) and that Mickens could not make A.S. leave. Mickens and his teenaged son began to throw A.S.'s belongings outside. Mickens even threw A.S.'s crutches outside and grabbed A.S. by her hair and dragged her outside down three stairs

onto the front lawn. Mickens then poured a can of beer on A.S. and stomped on her already-broken leg over a dozen times. A neighbor saw A.S. and attempted to help her but did not call the police for fear of becoming Mickens's next target. Mickens dragged A.S. back inside, where he had sex with her. A.S. begged Mickens to call 911, but he refused.

[8] The following morning, A.S. crawled to the bathroom and realized that her leg was so broken that a bone was almost protruding from her skin. Mickens agreed that A.S. would have to go to the hospital but again refused to allow A.S. to call 911. When Mickens left the home later than morning, A.S. found the cell phone that Mickens had hidden from his daughter and called for an ambulance.

[9] The paramedic and EMT who arrived with the ambulance saw A.S.'s belongings still strewn on the front yard. When they reached A.S., her leg was so broken it was "floppy," and her foot was pointing in the wrong direction. *Id*. at 122. They also observed that a bone had almost broken through her skin. A.S. told the first responders that Mickens had stomped on her leg. The ambulance took A.S. to the hospital, where she was treated by the same physician who had seen her before. She noted that A.S.'s right ankle was "grossly deformed" and that A.S. was in "excruciating pain." *Id*. at 179. By this time, a splintered piece of bone had punctured through A.S.'s skin, and her ankle mortise, where the ankle bones come together, was "totally destroyed." *Id*. at 180. A.S. had to be anesthetized so that the physicians could perform a

"joint reduction."[2] *Id*. at 182–83. Following this, A.S. underwent two surgeries to repair the bones in her ankle and remained in the hospital for two weeks.

[10] On April 12, 2017, the State charged Mickens with two counts of Level 1 felony rape, one count of Level 3 criminal confinement resulting in serious bodily injury, one count of Level 5 battery resulting in serious bodily injury, two counts of Class A misdemeanor battery resulting in bodily injury, one count of Class A misdemeanor theft, one count of Class A misdemeanor interfering with the reporting of a crime, and one count of Class A misdemeanor domestic battery. A bench trial was held on January 25, 2018, and, on February 7, 2018, the trial court entered an order finding Mickens guilty as charged, save the two counts of rape. The trial court later entered an amended order finding Mickens not guilty of interfering with the reporting of a crime.

[11] At a sentencing hearing held on March 6, 2018, the court entered judgments of conviction for Level 3 felony criminal confinement, Class A misdemeanor battery resulting in bodily injury, and Class A misdemeanor theft and "merged" the remaining guilty findings, i.e., did not enter judgment of conviction on these findings. The court imposed a sentence of fifteen years on the criminal confinement conviction, and concurrent one-year sentences on the remaining two convictions. Mickens now appeals.

---

[2] Joint reduction is performed "when you got a broken bone and the bone is no longer in alignment with the other portion of the bone. So generally you sedate the patient and you just pull it back into place, so that the bone is actually aligned." *Id*. at 183.

# Standard of Review

[12]     On appeal, Mickens argues that the State presented insufficient evidence to support his conviction for criminal confinement resulting in serious bodily injury.[3] Our standard of review on claims of insufficient evidence is well settled:

> When reviewing a claim that the evidence is insufficient to support a conviction, we neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the trier of fact to weigh any conflicting evidence. We consider only the probative evidence supporting the [judgment] and any reasonable inferences which may be drawn from this evidence. We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

*Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied* (citing *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005)).

# Discussion and Decision

[13]     A person who "knowingly or intentionally confines another person without the other person's consent" commits the crime of criminal confinement. Ind. Code § 35-42-3-3(a). The word "confine" is defined to mean to "substantially interfere with the liberty of a person." Ind. Code § 35-42-3-1. Criminal confinement is a Level 3 felony if "it results in serious bodily injury to a person other than the confining person." *Id.* at § 3(b)(2)(B). "Serious bodily injury" is defined by

---

[3] Mickens does not challenge the sufficiency of the evidence to support his convictions for battery or theft.

statute to mean "bodily injury that creates a substantial risk of death or that causes: . . . (3) extreme pain; [or] (4) permanent or protracted loss or impairment of the function of a bodily member or organ[.]" Ind. Code § 35-31.5-2-292.

[14] Here, in its charging information, the State tracked this statutory language and alleged that Mickens "did knowingly or intentionally confine [A.S.] without the consent of [A.S.], said act resulting in serious bodily injury to [A.S.], to wit: extreme pain and/or unconsciousness." Appellant's Confidential App. p. 47.

[15] Mickens argues the evidence of injury to A.S. does not give rise to an inference of confinement. Mickens acknowledges that there was evidence that he committed a battery but argues that A.S.'s injuries were not the result of any confinement, writing "Mickens did not cause [A.S.]'s second set of fractures by ejecting her from the house and dragging her into the front yard, but by the battery he committed once she was there." Appellant's Br. at 16.

[16] Mickens appears to argue that there was insufficient evidence to show that he confined A.S. and that there was insufficient evidence to show that any confinement resulted in serious bodily injury to A.S. To the extent that Mickens argues that there was no evidence that he confined A.S., he is mistaken.

[17] Mickens cites *McFadden v. State*, 25 N.E.3d 1271 (Ind. Ct. App. 2015), in support of his argument. In that case, the victim was standing outside an apartment complex talking with a resident when the defendant's stepfather approached him and hit him in the head. *Id*. at 1272. The stepfather also pulled

the victim's hair and struck him in the face, at which point the victim fell to the ground. *Id*. The defendant and another man then approached and began to push, hit, and kick the victim. *Id*. The defendant also grabbed the victim's hair. *Id*. at 1272–73. The defendant was convicted of Class B felony criminal confinement and Class B felony battery.

[18] McFadden argued on appeal that the evidence was insufficient to support his conviction because, he claimed, there was no evidence that he forcibly removed the defendant from one place to another. At the time McFadden committed his offenses, the confinement statute provided that the offense could be committed by either confining a person against his or her will, or by "remov[ing] another person, by fraud, enticement, force, or threat of force, from one (1) place to another[.]" Ind. Code § 35-42-3-3(a)(2) (2012). The *McFadden* court noted that Indiana courts had held that "to prove confinement beyond the main crime charged, there must be something more than the act necessary to effectuate the crime, albeit, rape, theft, escape or battery." 25 N.E.3d at 1274 (citations omitted). The *McFadden* court then held:

> Our review of the record reveals no independent evidence beyond McFadden's battery of [the victim]—which was established by evidence that McFadden pushed, hit, and kicked [the victim] and pulled his hair—that would support a conviction for criminal confinement. Not only is there no direct evidence of confinement, [the victim] never testified that he felt confined. And the mere fact that [the victim] was injured during the battery does not mean that he was confined.

*Id*. at 1275.

[19] Mickens argues that the same is true here, i.e., that the fact that there was evidence that he stomped on A.S.'s leg does not support a finding of confinement. We do not think that *McFadden* is controlling here.

[20] First, the criminal confinement statute has been amended to remove the "removal" subsection, and Mickens was charged with "confining" A.S. without her consent, not removing her from one place to another. The holding in *McFadden* is distinguishable for this reason alone. More importantly, however, here there was evidence other than the battery that Mickens confined A.S. Specifically, there was evidence that Mickens threw a plate at A.S. and told her to leave the house. She refused because she was watching the children and because E.S. had informed her that Mickens could not make her leave. Mickens responded by throwing A.S.'s belongings on the front lawn, grabbing her by the hair, and dragging her outside onto the lawn. After pouring a beer on her and stomping on her already-broken leg, Mickens then grabbed A.S. and dragged her back to the front door. From this evidence, and not merely the act of stomping on A.S.'s leg, the trial court, acting as the trier of fact, could reasonably conclude that Mickens substantially interfered with A.S.'s liberty without her consent.[4]

[21] To the extent that Mickens argues that the evidence was insufficient to show that his confinement of A.S. resulted in serious bodily injury to A.S., we again

---

[4] The fact that the State argued at trial that the confinement consisted of Mickens's act of stomping on A.S.'s leg did not limit the trial court's ability to find Mickens guilty for any reason supported by the evidence.

disagree. In support of this argument, Mickens cites *State v. Greene*, 16 N.E.3d 416 (Ind. 2014), an appeal from the grant of post-conviction relief.

[22] In *Greene*, the petitioner argued that he had received ineffective assistance of counsel because his trial and appellate counsel had failed to cite what he believed to be controlling precedent that would establish that the evidence was insufficient as a matter of law to support his conviction for criminal confinement. Greene had been convicted of *inter alia* Class B felony criminal confinement for a prolonged incident spanning two days during which he terrorized his girlfriend and held her captive in their shared apartment. While in their bedroom, Greene strangled his victim until she lost consciousness, and when she regained consciousness, she was on a couch in their living room. After his convictions were affirmed on direct appeal, Greene successfully sought post-conviction relief, and the State appealed.

[23] On transfer to our supreme court, Greene argued that he was entitled to relief under *Long v. State*, 743 N.E.2d 253 (Ind. 2001). The *Greene* court summarized the holding in *Long* as follows:

> Long insisted that although there was evidence that his victim [] suffered fractured facial bones, there was no evidence that these injuries resulted from her being forcefully removed from one place to another. Without such evidence, he reasoned, there was insufficient evidence to establish the serious bodily injury enhancement. The State countered that "the jury could have inferred that [the victim]'s injuries to her nose and eye socket were caused during her movement from one place to another" but did not identify any evidence as proof. On review, we found that "the evidence was insufficient to establish that the conduct

constituting *the charged offense* of criminal confinement resulted in serious bodily injury."

Crucially, "the charged offense" was that (1) Long (2) knowingly or intentionally (3) removed the victim from one place to another (4) by force. Ind. Code § 35-42-3-3. At issue were elements three *and* four, and without identifying the circumstances under which [the victim] sustained facial fractures, the State could not establish beyond a reasonable doubt that [the victim]'s serious bodily injury occurred *during* her forcible removal from one place to another. This was likely attributable to the facts of the case: Long and two others confined [the victim] for possibly longer than one week in an attic, and in the course of her captivity and murder, inflicted numerous injuries upon her. Under these circumstances, the State was likely unable to isolate precisely when [the victim] sustained her fractures. Thus, the jury was unable to find that serious bodily injury resulted from her forcible removal.

16 N.E.3d at 420 (citing *Long*, 743 N.E.2d at 259–60, 262) (emphasis added in *Greene*).

[24] The *Greene* court found *Long* to be factually distinguishable because the victim in Greene's trial testified that Greene strangled her until she was unconscious. Thus, "the jury could have reasonably inferred that Greene's act of force, strangulation, both facilitated his removal of [the victim] from their bedroom to their living room and resulted in serious bodily injury to her." *Id.* The *Greene* court held that, unlike in *Long*, the evidence here supported the State's contention that the defendant's knowing or intentional removal of the victim from one place to another by force resulted in serious bodily injury to the victim. *Id.* at 420–21.

[25] The *Greene* court further rejected Greene's claim that *Long* held that the State was required to prove that the victim's serious bodily injury was caused during the victim's movement from one place to another.[5] Instead, the court held that, although there must be a "temporal link" between the inducement and the removal "so as to constitute one incident," the court did not interpret the confinement statute so narrowly as to "require the serious bodily injury to be suffered by the victim *during* the actual act of removal from one place to another." *Id*. at 421 (emphasis added). After reviewing *Long* and a similar case, the *Greene* court ultimately held that "serious bodily injury to the victim must be sustained during the charged offense of criminal confinement . . . . Thus, the victim must suffer serious bodily injury as the result of the act of forcible removal, whether or not the act of force occurs simultaneously with the act of removal." *Id*. at 423.

[26] In the present case, the evidence presented at trial shows that Mickens dragged A.S. by her hair to the front yard, thereby confining her, repeatedly stomped on her already-broken leg, and then dragged her back to the front door, again confining her. Thus, there was, in the words of the *Greene* court, a "temporal link" between the injury and the confinement such that they constituted one incident. Indeed, here, the order of events could be viewed as confinement, injury, and additional confinement. Thus, the injury did occur *during* the incident of confinement, and the evidence is sufficient to support Mickens's

---

[5] As in *McFadden*, Greene's acts of confinement took place when the confinement statute contained the "removal" subsection.

conviction for Level 3 felony criminal confinement resulting in serious bodily injury.

## Conclusion

[27] We hold that the evidence was sufficient to support Mickens's conviction for confinement resulting in serious bodily injury. First, Mickens grabbed A.S. by the hair and dragged her onto the front lawn, where he poured beer on her and stomped on her broken leg, and eventually dragged her back to the front door. Thus, Mickens substantially interfered with A.S.'s liberty without her consent. Furthermore, the evidence showed that during this incident of confinement, Mickens seriously injured A.S.'s already-broken leg by repeatedly stomping on it. Thus, the State adequately proved that the criminal confinement resulted in serious bodily injury to A.S. We therefore affirm the judgment of the trial court.

[28] Affirmed.

Bailey, J., and Bradford, J., concur.