FILED

Dec 31 2024, 8:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court





IN THE

# Court of Appeals of Indiana

Eric Manual Montgomery,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

---

December 31, 2024

Court of Appeals Case No.
23A-CR-2052

Appeal from the
Monroe Circuit Court

The Honorable
Valeri Haughton, Judge

Trial Court Cause No.
53C02-2208-F3-746

**Opinion by Senior Judge Baker**
Judges Tavitas and DeBoer concur.

**Baker, Senior Judge.**

# Statement of the Case

Eric Montgomery was convicted of raping a college student when she was so mentally deficient due to intoxication that she was incapable of giving consent to the sexual conduct. The jury also convicted Montgomery of furnishing alcohol to a minor and attempting to obstruct justice, and he admitted that he is an habitual offender. Montgomery appeals, alleging insufficient evidence, evidentiary error, instructional error, and charging error. Finding the evidence sufficient and no error, we affirm.

# Issues

Montgomery presents four issues for our review, which we restate as:

> I. Whether the evidence was sufficient to sustain Montgomery's conviction of rape.

> II. Whether the trial court erred in certain evidentiary rulings.

> III. Whether the trial court erred in instructing the jury.

> IV. Whether the State's failure to file a copy of the amended charging information violated Montgomery's constitutional rights.

## Facts and Procedural History

[3] In August 2022, A.M., a twenty-year-old college student, returned to campus for the start of a new school year. After spending the day setting up her apartment with her roommate, A.M. went to a party that night. Riding home later with friends, A.M. insisted on being dropped off at a gas station near the home of another friend, whom she wanted to visit. A.M. never made it to her friend's home. Instead, at some point in the wee hours of the morning, A.M. encountered thirty-three-year-old Montgomery.

[4] According to Montgomery, he and A.M. drank, smoked a joint, and had sex in his vehicle. Montgomery then took A.M. to his bedroom in the basement of his mother's home. There, the two had sex again, and Montgomery fell asleep. When Montgomery awoke later, A.M.'s lips were blue and her eyes were rolled back in her head. Montgomery's mother called 911. Although emergency personnel administered life-saving techniques, ultimately A.M. was pronounced dead. Her death was ruled an accident after an autopsy revealed that she died from a toxic mix of alcohol and two different opioids—fluorofentanyl and fentanyl—causing the depression of her central nervous system and eventual loss of respiratory function.

[5] The State charged Montgomery with rape, a Level 3 felony, and furnishing alcohol to a minor, a Level 6 felony, and alleged him to be an habitual offender. The State later added the charge of attempted obstruction of justice, a Level 6 felony. A jury found Montgomery guilty of rape, the lesser-included B

Misdemeanor furnishing alcohol to a minor, and attempted obstruction of justice, and he admitted to being an habitual offender. The court imposed an aggregate sentence of thirty-six years. Montgomery now appeals.

## Discussion and Decision

### I. Sufficiency of the Evidence

#### A. Intoxication constituting "mentally disabled or deficient"

Montgomery contends the evidence was insufficient to sustain his conviction of rape. The relevant portion of the rape statute provides: "[A] person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct . . . when . . . the other person is so mentally disabled or deficient that consent to sexual intercourse or other sexual conduct . . . cannot be given . . . commits rape, a Level 3 felony." Ind. Code § 35-42-4-1(a)(3) (2022). Montgomery argues the State failed to prove that A.M., by virtue of being voluntarily intoxicated, was so mentally disabled or deficient that she was unable to give her consent to the sexual conduct. Specifically, he asserts that voluntary intoxication is not equivalent to being "mentally disabled or deficient."

While our legislature has not defined this phrase as it is used in the rape statute or anywhere in Title 35, this Court previously recognized in a reported case that the voluntary intoxication of the victim constitutes mental disability or deficiency for purposes of the rape statute. In *Gale v. State*, 882 N.E.2d 808

(Ind. Ct. App. 2008), we held the evidence was sufficient to support a conviction for rape when the victim was so mentally disabled or deficient by virtue of her intoxication that she was not able to consent to sexual intercourse. The evidence in *Gale* showed that the victim was highly intoxicated when she left a bar, had to be assisted to a vehicle, was drifting in and out of consciousness, and had a 0.309 blood alcohol level.

[8]     Prior to our decision in *Gale*, we decided *Hancock v. State*, which was later affirmed in relevant part by our Supreme Court. 758 N.E.2d 995 (Ind. Ct. App. 2001), *aff'd in relevant part*, 768 N.E.2d 880 (Ind. 2002). There, we held the evidence was sufficient to sustain convictions for rape and criminal deviate conduct where the State had charged that the victim was so mentally disabled or deficient by reason of ingesting Xanax that consent could not be given. Acknowledging our decisions in both *Gale* and *Hancock*, Montgomery asserts that our interpretation of the phrase "mentally disabled or deficient" to include a state caused by intoxication is erroneous and asks that we reconsider and overrule these decisions.

[9]     Here, we take counsel from two well-established principles: stare decisis and legislative acquiescence. The doctrine of stare decisis provides that we must follow the previous decisions of this Court construing a statute unless provided with a strong reason justifying departure. *Halteman Swim Club v. Duguid*, 757 N.E.2d 1017, 1021 (Ind. Ct. App. 2001). As we have previously explained, "'[t]he decisions of the appellate districts are law governing all of Indiana and cannot be disregarded.'" *Id.* at 1020 (quoting *Lincoln Utils., Inc. v. Office of Util.*

*Consumer Couns.*, 661 N.E.2d 562, 565 (Ind. Ct. App. 1996), *trans. denied*). Additionally, judicial interpretation of a statute, accompanied by substantial legislative inaction for a considerable time, may be understood to signify the Legislature's acquiescence in and agreement with the judicial interpretation. *Beer v. State*, 885 N.E.2d 33, 42 (Ind. Ct. App. 2008); *see also Fraley v. Minger*, 829 N.E.2d 476, 492 (Ind. 2005) (noting that usual reasons supporting adherence to precedent are reinforced by strong probability that courts have correctly interpreted will of legislature where judicial interpretation of statute is accompanied by legislative inaction for substantial time).

[10] Following *Gale*, a panel of this Court interpreted "mentally disabled or deficient" under the sexual battery statute in *Ball v. State*, 945 N.E.2d 252 (Ind. Ct. App. 2011), *trans. denied*. There we noted:

> In a criminal deviate conduct case alleging mental disability or deficiency, this court held that "[t]he plain and ordinary meaning of the words 'mentally disabled or deficient' is subnormal intelligence or mental disease or defect." *Douglas v. State*, 484 N.E.2d 610, 613 (Ind. Ct. App. 1985). **Noting the phrase "mental disability or deficiency" is qualified by the resultant inability to give consent, the meaning has been expanded for purposes of [the rape and criminal deviate conduct] statutes to include** not only a victim with lower-than-normal intelligence, *see, e.g.*, *Bozarth v. State*, 520 N.E.2d 460, 463 (Ind. Ct. App. 1988) (twenty-one year old victim was deaf, legally blind, and had a mental age of approximately ten years old and an I.Q. between fifty and seventy), *trans. denied*, but also **a victim who was highly intoxicated**, *Gale v. State*, 882 N.E.2d 808, 818 (Ind. Ct. App. 2008), **and a victim who had unknowingly ingested eight**

**Xanax**, *Hancock v. State*, 758 N.E.2d 995, 1004 (Ind. Ct. App. 2001), *aff'd in relevant part*, 768 N.E.2d 880 (Ind. 2002).

*Id.* at 257 (emphasis added). Further, a recent memorandum decision by this Court, while not binding precedent, is nonetheless noteworthy here. In *M.W. v. State*, No. 22A-JV-2952 (Ind. Ct. App. Aug. 31, 2023) (mem.), we determined the evidence was sufficient to support a true finding against M.W. on the allegation of rape when the victim was so mentally disabled or deficient due to intoxication that she was not able to consent to sexual intercourse.

[11] In sum, in the sixteen years since our decision in *Gale*, the General Assembly has not acted to alter our interpretation of the phrase "mentally disabled or deficient" to encompass more than victims with lower-than-normal intelligence. Certainly, had the General Assembly disapproved of our approach, it could have done so. Therefore, inasmuch as the Legislature's inaction amounts to acquiescence, our interpretation and construction should not be minimized or disregarded. *Bender Enters., LLC v. Duke Energy, LLC*, 201 N.E.3d 206, 211 (Ind. Ct. App. 2022) (quoting *Perkinson v. Perkinson*, 989 N.E.2d 758, 763 (Ind. 2013)).

[12] Montgomery additionally suggests that interpretation of the phrase "mentally disabled or deficient" in the rape statute to include consideration of the victim's voluntary intoxication cannot be harmonized with our voluntary intoxication statute. That statute provides that voluntary intoxication is not a defense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense. *See* Ind. Code § 35-41-2-5 (1997). He

reasons that such an interpretation of the rape statute results in discrimination when both the defendant and the victim are intoxicated and engage in sex because "the criminal code treats their intoxication differently." Appellant's Br. p. 26. Montgomery also claims that such circumstances encourage arbitrary enforcement of the rape statute.

[13] We do not find these arguments persuasive. Criminal defendants and victims of crimes are two separate categories of people with different status under the law. Our state's proscription of voluntary intoxication as a defense to any criminal offense is well-settled. In adopting Section 35-41-2-5, the General Assembly decreed that intoxication, if voluntary, supplies the general requirement of a voluntary act sufficient to place the voluntarily intoxicated offender at risk for the consequences of his actions, "'even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime.'" *Orta v. State*, 940 N.E.2d 370, 376 (Ind. Ct. App. 2011) (quoting *Sanchez v. State*, 749 N.E.2d 509, 517 (Ind. 2001) (upholding constitutionality of intoxication statute)), *trans. denied*.

[14] Moreover, our rape statute does not criminalize consensual sexual conduct between two people, regardless of their intoxication. Rather, the statute criminalizes an offender's sexual conduct with a person when that person is unaware of the conduct or is incapable of giving or unwilling to give consent to the conduct. *See* I.C. § 35-42-4-1. And, while the decisions whether to prosecute and what charges to bring generally rest in the discretion of the

prosecutor, *J.G. v. State*, 30 N.E.3d 777, 780 (Ind. Ct. App. 2015), such statutory guidelines regulate those decisions.

[15] Thus, Montgomery has not presented a strong reason to justify a departure from our holdings in *Hancock* and *Gale*. *See Halteman Swim Club*, 757 N.E.2d at 1021 (stating that appellate court must follow its previous decisions construing statute unless provided strong reason warranting deviation). Furthermore, given our Legislature's declaration twenty-seven years ago that voluntary intoxication may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense and its sixteen-year acquiescence in our interpretation of the rape statute, we decline to find that these cases were incorrectly decided.

### B. Lack of capacity to consent

[16] Montgomery next asserts that, even if we uphold our interpretation of the phrase "mentally disabled or deficient" to encompass voluntary intoxication, the evidence was still insufficient to show A.M. was so mentally disabled or deficient that she was not able to give consent to the sexual conduct.

[17] In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Sandleben v. State*, 29 N.E.3d 126, 131 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable factfinder could have found the defendant guilty beyond a

reasonable doubt, the verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501, 502 (Ind. Ct. App. 2015). Further, when an appellant challenges the sufficiency of the evidence of his convictions after a jury verdict, "the appellate posture is markedly deferential to the outcome below . . . ." *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016).

[18] At trial, the State's evidence included the testimony of A.M.'s friends that she had wine before going out that night and then drank alcohol at a party. Tr. Vol. 3, p. 58; Tr. Vol. 4, p. 60. One friend testified that A.M. was drunk that night, and another estimated that "she was intoxicated." Tr. Vol. 4, pp. 64, 74. One of those friends also acknowledged that A.M. slurred her words, argued with/yelled at her friend, behaved erratically, and opened the door of the car while it was moving. *Id.* at 74. A stranger whose door A.M. mistakenly knocked on testified he "could tell she was intoxicated." Tr. Vol. 3, p. 117. A.M. asked the man for her friend, Loren, and, although he told A.M. Loren was not there, A.M. asked three or four more times during their brief exchange. *Id.* In addition, the State introduced surveillance video from several businesses that captured A.M.'s wanderings around town prior to her meeting up with Montgomery.

[19] The mother of Montgomery's child testified that Montgomery called her that night asking for advice because A.M. "was too drunk to leave downtown." *Id.* at 140. And she acknowledged telling the police that neither she nor Montgomery could understand A.M., that A.M. "didn't really make sense," and that A.M. had "sounded like she was drunk." *Id.* at 151.

[20] The State also introduced Montgomery's videotaped statement to police. In it, Montgomery explained that when he picked up A.M. they were going to "sober up a little bit." Ex. 19 at 8:42. Instead, he drove to a parking lot where he allowed A.M. to drink some tequila from a bottle he had in his car. *Id.* at 9:57. He also provided A.M. with marijuana, which they smoked before they had sex. *Id.* at 8:50-9:03. Montgomery stated that A.M.'s "breathing was like real bad." *Id.* at 9:47. He further explained that A.M. was "breathing hard" and "breathing weird" and that he was "thinking like, man, she's got alcohol poisoning." *Id.* at 10:19-21, 10:56. Montgomery called his "baby mama" for advice because he did not know what to do. *Id.* at 10:23. Despite A.M.'s condition, Montgomery was not eager "to just rush to the hospital." *Id.* at 10:33. He stated that although he was using the air conditioning in his car, A.M. was sweating a lot. He then took A.M. to his "mom's crib," where they went to the basement, and he rolled another joint. *Id.* at 12:15-17, 12:32-33. Montgomery explained that he and A.M. were "kicking it." *Id.* at 12:35. Montgomery then had sex with A.M. a second time. *Id.* at 12:59.

[21] Montgomery concedes that A.M. showed signs of intoxication in the surveillance videos where she "staggered here and there and swayed back and forth" and that she "repeatedly tried the same thing to get the elevator [in her apartment building] to work." Appellant's Br. p. 31. Yet, he points to a portion of video showing that A.M. "jogged down the street" as well as evidence that she sent two Snapchat messages on his phone to support his

argument that A.M. was not so intoxicated at the time she was with him that she was unable to give consent to sexual intercourse.

[22] "Our supreme court has recognized that proof beyond a reasonable doubt is a quantum of evidence that leaves the jury 'firmly convinced' and not one that overcomes every possible doubt or one that reaches a level of absolute certainty." *Veach v. State*, 204 N.E.3d 331, 337 (Ind. Ct. App. 2023), *trans. denied*. Moreover, when evaluating a sufficiency claim, we respect the exclusive province of the jury to weigh any conflicting evidence. *Mickens v. State*, 115 N.E.3d 520, 523 (Ind. Ct. App. 2018) (quoting *Harrison v. State*, 32 N.E.3d 240, 247 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*.

[23] Montgomery's argument overlooks the fact that it is not necessary for the State's evidence to overcome every possible doubt and amounts to a request for us to reweigh the evidence, which we cannot do. Probative evidence in the record shows that A.M. was impaired throughout the evening and into the early morning hours. Although Montgomery believed A.M. needed to "sober up," he provided her with more alcohol, as well as marijuana, before he engaged in sex with her. The evidence further shows that A.M. was having serious difficulty breathing and that Montgomery was aware of her condition—so much so that it occurred to him she may need emergency medical attention. Yet, Montgomery took A.M. to his home, provided her with more marijuana, and had sex with her a second time. Thus, we conclude sufficient evidence exists from which a reasonable jury could find beyond a reasonable doubt that

A.M. was so mentally disabled or deficient due to her intoxication that she was unable to consent to sexual intercourse with Montgomery.

## II. Evidentiary Rulings

"'The admission or exclusion of evidence lies within the sound discretion of the trial court and is afforded great deference on appeal.'" *Singh v. State*, 203 N.E.3d 1116, 1121 (Ind. Ct. App. 2023) (quoting *Housand v. State*, 162 N.E.3d 508, 513 (Ind. Ct. App. 2020), *trans. denied*). Accordingly, we review challenges to the trial court's admission or exclusion of evidence for an abuse of discretion. *Sloan v. State*, 224 N.E.3d 362, 367 (Ind. Ct. App. 2023), *trans. denied*. An abuse of discretion results from a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* "'Errors in the admission or exclusion of evidence are considered harmless unless they affect the substantial rights of a party[,]'" and "'[t]o determine whether an error in the admission of evidence affected a party's substantial rights, we assess the probable impact of the evidence on the jury.'" *Singh*, 203 N.E.3d at 1121 (quoting *Housand*, 162 N.E.3d at 513).

### A. Exclusion of Evidence

Montgomery asserts the trial court abused its discretion by excluding testimony that, on the night in question, A.M. had sought cocaine. He alleges this evidence is relevant to show that A.M. obtained the fentanyl from someone other than him and that she used it voluntarily.

[26] Indiana Evidence Rule 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. The proffered evidence is not relevant to Montgomery's charge of rape, which stated that he knowingly or intentionally had sexual intercourse or other sexual conduct with A.M. when she was so mentally disabled or deficient that consent to the sexual intercourse or other sexual conduct could not be given.

[27] The testimony that A.M. had sought cocaine that night is not relevant to Montgomery's charge of rape because it does not concern a fact that is of consequence to his charge. Moreover, the evidence showed that A.M. had no cocaine in her system but that both fentanyl and fluorofentanyl were present. The evidence also showed that the police searched Montgomery's bedroom and car and found no evidence of fentanyl. And Montgomery was not charged with any offense related to A.M. obtaining or ingesting fentanyl. Accordingly, the trial court did not abuse its discretion by excluding the testimony.

## B. Admission of Evidence

[28] We next address Montgomery's contention that the trial court abused its discretion when it admitted, over his objection, the testimony of A.M.'s friend that A.M. was in a monogamous relationship and was not promiscuous. As with the exclusion of evidence, we review the admission of evidence for an abuse of discretion and will disturb the ruling only if the court's decision is clearly against the logic and effect of the facts and circumstances. *Sloan*, 224 N.E.3d at 367.

[29]     Even assuming the trial court erred in admitting this testimony, we note that "'[t]he erroneous admission of evidence does not require reversal when evidence of the same probative value is admitted without objection.'" *Trammell v. State*, 751 N.E.2d 283, 288 (Ind. Ct. App. 2001) (quoting *Sisk v. State*, 736 N.E.2d 250, 251 (Ind. 2000)). Here, another friend of A.M. testified without objection that A.M. and her boyfriend were "very much together" and "committed." Tr. Vol. 3, pp. 100-01.

[30]     Moreover, "[e]rrors in the admission of evidence are ordinarily disregarded as harmless error unless they affect the substantial rights of a party." *Remy v. State*, 17 N.E.3d 396, 401 (Ind. Ct. App. 2014), *trans. denied*. "The effect of an error on a party's substantial rights turns on the probable impact of the impermissible evidence upon the jury in light of all the other evidence at trial." *Gonzalez v. State*, 929 N.E.2d 699, 702 (Ind. 2010). "Put differently, the error is harmless when the conviction is supported by such substantial independent evidence of guilt that there is no substantial likelihood that the impermissible evidence contributed to the conviction." *Id.*

[31]     There was substantial independent evidence presented at trial of Montgomery's guilt concerning his charge of knowingly or intentionally having sexual intercourse or other sexual conduct with A.M. when she was so mentally disabled or deficient that she could not consent to the conduct. Montgomery admitted to having sex with A.M., and the probative evidence shows that she was impaired. *See* Issue I., B., *supra*. Therefore, the error, if any, did not affect Montgomery's substantial rights and was harmless.

## III. Instructional Error

[32] We turn next to Montgomery's claim of instructional error. He concedes he did not object to the disputed instruction or offer instructions of his own, thus he alleges the instructional defects rise to the level of fundamental error. *See Covey v. State*, 929 N.E.2d 813, 819 (Ind. Ct. App. 2010) (stating that where defendant failed to object to jury instruction or failed to tender his own instruction, claim of error on appeal is waived unless he can show fundamental error).

[33] Fundamental error is an extremely narrow exception to waiver, providing relief only in egregious circumstances. *Barthalow v. State*, 119 N.E.3d 204, 211 (Ind. Ct. App. 2019) (quoting *Pattison v. State*, 54 N.E.3d 361, 365 (Ind. 2016)). An error is fundamental if it made a fair trial impossible or was a "'clearly blatant violation'" of basic principles of due process that presented "'an undeniable and substantial potential for harm.'" *Johnson v. State*, 218 N.E.3d 585, 587 (Ind. Ct. App. 2023) (quoting *Miller v. State*, 188 N.E.3d 871, 874 (Ind. 2022)).

### A. Elements of Offense

[34] Montgomery asserts the instruction setting forth the elements of rape failed to instruct the jury that the mens rea also should have been applied to the element of A.M.'s mental disability or deficiency. In other words, Montgomery had to know that A.M. was so mentally disabled or deficient that she could not consent to the conduct. He also argues the instruction failed to provide the legal definition of capacity to consent, and he reasons that without these

supplemental instructions, the elements instruction was incomplete, imprecise, and unreliable.

[35]     Final instruction number 6 set forth the crime of rape as follows:

> A person who knowingly or intentionally has sexual intercourse with another person or knowingly or intentionally causes another person to perform or submit to other sexual conduct when the other person is so mentally disabled or deficient that consent to sexual intercourse or other sexual conduct cannot be given, commits rape, a level 3 felony.
>
> Before you may convict the Defendant of Rape, a level 3 felony, as charged in Count I, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. On or about August 17, 2022
>
> 2. in Monroe County, State of Indiana
>
> 3. the Defendant, Eric M. Montgomery,
>
> 4. did knowingly or intentionally
>
> 5. have sexual intercourse with [A.M.], or cause [A.M.] to perform or submit to other sexual conduct
>
> 6. when [A.M.] was so mentally disabled or deficient
>
> 7. that consent to sexual intercourse or other sexual conduct could not be given.

> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Rape, a level 3 felony, as charged in Count I.

Appellant's App. Vol. 3, p. 88. As this instruction not only tracks the language of the rape statute, *see* Section 35-42-4-1(a)(3), but also follows the language of Indiana Pattern Jury Instruction No. 3.2900 concerning the offense of rape, we presume it is satisfactory. *See Ramirez v. State*, 174 N.E.3d 181, 199 (Ind. 2021) (stating that jury instruction is presumptively correct if it tracks verbatim language of statute and use of pattern jury instructions is preferred practice).

[36] Moreover, the precise issue raised by Montgomery here was addressed by this Court in *Gale*. There, Gale contended the rape instruction was erroneous because it did not instruct the jury that he had to have sexual intercourse knowing that his victim was unaware that he was doing so. In *Gale*, we relied on another decision of this Court, where we held that, because the rape statute includes a "knowing" element and a person engages in conduct knowingly when he is aware of a high probability that he is doing so, an offender must be aware of a high probability that the victim is mentally disabled and unable to consent to sexual intercourse. *See Gale*, 882 N.E.2d at 816 (quoting *Bozarth v. State*, 520 N.E.2d 460, 464 (Ind. Ct. App. 1988), *trans. denied*). Accordingly, we determined that Gale had to be aware of a high probability that his victim was unaware that sexual intercourse was occurring. *Gale*, 882 N.E.2d at 816. However, we concluded the claimed instructional error did not result in fundamental error because there was substantial evidence presented at trial that

the victim was unaware that sexual intercourse was occurring and that Gale was aware of her condition. *See id.*

[37] Similarly here, even though the instruction did not explicitly instruct the jury that Montgomery had to be aware of a high probability that A.M. was unable to consent, the challenged instruction did not result in fundamental error. There was substantial probative evidence that A.M. was unable to consent to sex and that Montgomery was aware of her condition. *See* Issue I., B., *supra*; *see also Buckner v. State*, 857 N.E.2d 1011, 1015 (Ind. Ct. App. 2006) (noting that instructional error is harmless where conviction is clearly sustained by evidence and jury could not properly have found otherwise).

## B. Definition of Capacity to Consent

[38] Montgomery also argues the trial court committed fundamental error by failing to instruct the jury as to the definition of "capacity to consent." Specifically, Montgomery asserts that this term has a legal definition and that, without it, the jury "did not have all matters of law that were necessary for their information in giving their verdict." Appellant's Br. p. 41.

[39] "When determining whether an element of an offense has been proven, the jury may rely on its collective common sense and knowledge acquired through everyday experiences—indeed, that is precisely what is expected of a jury." *Clemons v. State*, 83 N.E.3d 104, 108 (Ind. Ct. App. 2017), *trans. denied*. We have recognized a duty of the trial court to give instructions defining words used in other instructions only if "'the words are of a technical or legal meaning

normally not understood by jurors unversed in the law.'" *Id.* (quoting *Martin v. State*, 314 N.E.2d 60, 70 (Ind. 1974)).

[40] To support this claim of error, Montgomery points to statements of potential jurors during voir dire. *See* Appellant's Br. p. 43. Given that it was voir dire, the jury had not yet been advised of the law governing the case by way of the court's preliminary and final instructions nor had it heard any evidence. Moreover, Montgomery does not indicate whether the jurors he refers to were included on the actual jury panel for trial. Furthermore, he cites to no precedent supporting his claim that it was error, much less fundamental error, for the trial court not to give an instruction defining the term "capacity to consent."

[41] We conclude the term is not so technical in nature that a reasonable jury would not be able to use its collective common sense and everyday experiences to understand its meaning. Accordingly, we cannot conclude that the trial court's failure to provide the definition of the term "capacity to consent" was a substantial blatant violation of basic principles. *See Keister v. State*, 203 N.E.3d 548, 552 (Ind. Ct. App. 2023) (stating that instructional errors are harmless where conviction is clearly sustained by evidence and instruction would not likely have impacted jury's verdict).

## IV. Amended Charging Information

[42] For his final claim of error, Montgomery contends the State's failure to file a copy of the amended charging information containing the offense of attempted

obstruction of justice violated his constitutional rights. Montgomery acknowledges that he failed to object on this basis and must now show fundamental error.

[43] The State's brief discloses that it is unnecessary for us to address this final allegation of error. The State filed its motion to amend the charges on May 24, 2023 and included a copy of the amended information. *See* Appellant's App. Vol. 2, p. 21 (CCS); Appellee's App. Vol. 2, p. 2 (file-stamped copy of amended information). However, the CCS inadvertently failed to reflect the filing of a copy of the amended information. In May 2024, the State moved to correct the clerk's record to rectify this error, and the court granted the motion. *See* Appellee's App. Vol. 2, pp. 3-7.

## Conclusion

[44] Based on the foregoing, we decline to overrule our decisions in *Hancock* and *Gale* and conclude there was sufficient evidence to sustain Montgomery's conviction of rape. We further determine that the trial court's evidentiary rulings were not an abuse of its discretion and that neither its instructions to the jury nor the State's filing of the amended charging information amounted to error, much less fundamental error.

[45] Affirmed.

Tavitas, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana